## McKEY v. HYDE PARK VILLAGE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 1421. Submitted January 7, 1890. — Decided March 3, 1890.

The only contention between the parties in this action of ejectment was, whether the centre of a street in the village of Hyde Park was the southern boundary line of the plaintiff's land, or whether that line ran twenty-three feet further south. The court in its charge to the jury said: "In 1873 the village of Hyde Park laid out and opened 41st Street sixty-six

feet wide from Grand Boulevard to Vincennes Avenue, the centre of which was a line equidistant from the north and south lines of the quarter section, on the theory that this line was the true east and west boundary between the four quarters of the quarter section and the true southern boundary of the McKey tract; " and then directed the jury thus : " If you believe from the evidence that the centre of the street is the centre east and west line of the quarter section, then you are also instructed that it was and still is the true boundary line, and that the plaintiff is not entitled to the land described in the declaration on the theory that the Greeley survey was correct; " *Held*, that this was erroneous as it in effect directed the jury to find that the plaintiff was not entitled to recover; and, as the evidence was conflicting, that was a question to be determined by the jury.

A rule in force for the subdivision of public lands for disposal under the public land law does not necessarily apply to the subdivision of private lands by their owners after they have been granted by the government without having first made official subdivisions.

In Illinois the inference that an owner of land has dedicated it to the public for use as a street can only be drawn from acts which show an actual intention to so dedicate it, or from acts which equitably estop the owner from denying such intention.

EJECTMENT. Verdict for the defendant, and judgment on the verdict, to review which this writ of error was sued out. The case is stated in the opinion.

*Mr. J. R. Doolittle*, for plaintiff in error cited *Irwin* v. *Dixon*, 9 How. 10, 30; *Cincinnati* v. *White*, 6 Pet. 431; *Kelly* v. *Chicago*, 48 Illinois, 388; *Bauer* v. *Gottmanhausen*, 65 Illinois, 499 ; *Lull* v. *Chicago*, 68 Illinois, 518; *Kyle* v. *Town of Logan*, 87 Illinois, 64, 67; *Hyde Park* v. *Dunham*, 85 Illinois, 569, 577; *Chicago* v. *Johnson*, 98 Illinois, 618; *Herhold* v. *Chicago*, 108 Illinois, 467 ; *Peyton* v. *Shaw*, 15 Bradwell, Ill. App. 192, 196 ; *Robertson* v. *Wellsville*, 1 Bond, 81; *Lownsdale* v. *Portland*, Deady, 39 ; *Lansdown* v. *Elderton*, 14 Ves. 512; *Gray* v. *Gray*, 1 Beavan, 199 ; *Harding* v. *Harding*, 4. Myl. & Cr. 514; *Requea* v. *Rea*, 2 Paige, 339, 341; *Miller* v. *Collyer*, 36 Barb. 250; *Cazet* v. *Hubbell*, 36 N. Y. 677, 680; *Bloomington* v. *Bloomington Cemetery Assn.*, 126 Illinois, 221; *Chicago* v. *Stinson*, 124 Illinois, 510; *Gates* v. *Salmon*, 35 California, 576; *S. C.* 95 Am. Dec. 139; *Sutter* v. *San Francisco*, 36 California, 112.

*Mr. James H. Roberts,* for defendant in error, cited: *Cincinnati* v. *White's Lessee,* 6 Pet. 453, and cases cited; *Macon* v. *Franklin,* 12 Georgia, 239; *Case* v. *Favier,* 12 Minnesota, 89; *Cady* v. *Conger,* 19 N. Y. 256; *Barclay* v. *Howell's Lessee,* 6 Pet. 496, 513; *Wilder* v. *St. Paul,* 12 Minnesota, 192; *Forney* v. *Calhoun County,* 84 Alabama, 215; *Adams* v. *Saratoga Railroad,* 11 Barb. 414; *Chicago* v. *Wright,* 69 Illinois, 318.

MR. JUSTICE LAMAR delivered the opinion of the court.

This is an action of ejectment brought in the Circuit Court of the United States for the Northern District of Illinois by William D. McKey against the village of Hyde Park, to recover possession of a strip of land 23 feet wide and 150 long, used and occupied by the village as a part of a street known as Forty-first Street. The ground of McKey's complaint is, that the village, in locating and opening that street, entered upon, and unlawfully took possession of his land to the extent of the above mentioned strip, ejected him therefrom, and withholds from him the possession thereof. The defendant filed a plea of not guilty, and at the trial contended that the street, including that strip, was properly located and was rightfully used as a public highway by virtue of a common law dedication, and also under a deed from plaintiff's co-tenant, with the acquiescence of plaintiff through a long period of years.

The controversy in the case is as to the location of a boundary line, there being, according to the bill of exceptions, no contention as to the title of the premises in dispute. The land in dispute is in the south ten acres of the N.W. $\frac{1}{4}$ of the N.E. $\frac{1}{4}$ of section 3, township 38 N., R. 14 E. of the third principal meridian in Cook County, Illinois. Upon the trial it was shown that the trustees of the Illinois and Michigan Canal had owned the N.E. $\frac{1}{4}$ of section 3, deriving their title by grant from the State of Illinois; and that they conveyed the northwest quarter of this N.E. $\frac{1}{4}$ to P. F. W. Peck, describing it in the deed as the northwest quarter of the N.E. $\frac{1}{4}$ of the section, containing forty acres, more or less. By mesne convey-

ances the title to the south ten acres of this N.W. ¼ of the N.
E. ¼ of section 3, in June, 1886, became vested in two brothers,
Edward and Michael McKey, living in Wisconsin, as tenants
in common, and was held by them until the death of Michael
McKey, intestate, September 29, 1868, upon whose death his
interest therein descended to his four minor children, one of
whom, William D. McKey, the plaintiff, became of age on
September 18, 1874. Edward McKey died intestate August
14, 1875.

In order to show his title to the premises in dispute the
plaintiff put in evidence the proceedings of the Circuit Court
of Cook County in chancery in a suit for the partition of the
McKey tract among the heirs and owners thereof. As shown
by this evidence that court in that case appointed commis-
sioners to partition the land, and authorized them to subdivide
it into blocks, lots, streets and alleys, which they did, and
attached to the record a plat entitled " McKey's Addition
to Hyde Park."

The plaintiff also put in evidence the final decree in that
cause entered October 6, 1882, the said plat being a part of it.
The decree reads as follows :

"It appearing to the court that the plat in said report
attached, marked ' E ', which said commissioners have entitled
' McKey's Addition to Hyde Park,' being a subdivision made
by Circuit Court commissioners in partition of that part of
the south ten acres of the northwest quarter, etc., represents
their subdivision of the land above described under description
No. 5, and was by them duly submitted to the president and
board of trustees of said village of Hyde Park, and was
approved by them on the eighth of September, A.D. 1882, as
appears by the certificate of the clerk of said village thereon,
the pieces or parcels of land designated on this plat ' E ' as
streets and alleys being laid out for public streets and alleys
as on said plat ' E ' shown. It is further ordered, adjudged
and decreed that the several maps or plats by said commission-
ers prepared and the subdivision by them made and shown
thereon, and the respective titles given thereto, be, and the
same are hereby in all respects approved, ratified, and confirmed,

and it is ordered that the originals now here in court be recorded in the recorder's office of said Cook County, as required by law. And it is further ordered that the clerk of this court certify, under his hand and [the] seal of this court, on each of said original maps or plats a minute of the order of this court approving the same, in words and figures as follows, to wit:

"State of Illinois, } *ss :*.
"*County of Cook,* }

"This plat approved in all particulars by the court; and it is ordered that the same be recorded in the recorder's office of the County of Cook aforesaid. This certificate is made in pursuance of a decree of the Circuit Court of Cook County, in the State of Illinois, entered on the 6th day of October, 1882, in case number 39,801, in which William D. McKey and others are complainants and Richard M. McKey and others are defendants."

The plat shows that the lots embraced 23 feet of the street, and that the stakes of the lots were set 23 feet south of the north line of the street, leaving a strip 23 feet wide south of the lots to be thereby dedicated for use as a public street. The plaintiff for the purpose of showing that the line thus indicated by the plat as the southern boundary of the McKey tract was intended by the canal trustees to be the southern line of the N. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of section 3, offered in evidence, in addition to their conveyance to Peck, the purchaser from them of that tract, all the other conveyances made by them of the said northeast quarter of said section 3, as follows: (1) A deed to Robert S. Wilson, dated April 1, 1857, for the north half of the southwest quarter of that quarter section which was stated in the deed to contain $19\frac{31}{100}$ acres, more or less, in consideration of $965; (2) a deed to John C. Dodge, dated October 6, 1855, for the south half of the southwest quarter of that quarter section, stated in the deed to contain 20 acres, at the rate of $50 per acre, amounting to the sum of $1000; (3) a deed to Isaac Cook, dated August 16, 1852, conveying the northeast quarter of that

quarter section, containing 40 acres, more or less, at the rate of $15 per acre, amounting to the sum of $600; (4) a deed to William B. Egan, dated January 28, 1856, conveying the north half of the southeast quarter of that quarter section, containing $19\frac{31}{100}$ acres; and, (5) a deed to Margaret Johnson, dated July 1, 1859, conveying the south half of the southeast quarter of that quarter section, containing $19\frac{31}{100}$ acres.

It was admitted, as stated above, that the canal trustees had held title to the whole of the said northeast quarter, and that the above deeds placed all the titles to said quarter section in the grantees aforesaid.

The plaintiff then introduced one Henry J. Goodrich, who testified "to his signature upon the plat, and that he was one of the commissioners appointed by the court to make the partition, and was at the same time president of the board of trustees of the village of Hyde Park; that he knew where the stakes were driven by the surveyors who made the plat, and he knew that the land as staked took 23 feet off the street; that at the time the board approved the plat they knew it was taking more land than what 'was intended to be given;' that they wanted to change the street; they wanted to leave that question in court and approve of the plat as it then stood; that the board was then in favor of changing the location of that street. The witness further testified that he had known that land ever since 1865 or 1866, and that it was then enclosed with a fence; that the fence was an old fence; that the fence was south of the centre-line of the street as opened by the authorities of Hyde Park; and that he remembered the circumstance of a street being run through there. . . . It was admitted by stipulation of counsel that 41st Street was opened through the property in question in 1873."

Alexander Taylor, a witness for the plaintiff, testified that he resided very near this property for eighteen years, and had known it ever since 1869; and at one time lived on part of it. That "it was always fenced in until the time it was opened as a street, in 1873. · There was a fence on the south line of it in 1869, which was quite an old fence then and which the gardener made into a reed fence to give shelter to his

garden from the north winds, and on the south side of it was the Bowen lot, cultivated as a vegetable garden ; on the north side it was also enclosed.   There was no fence on the north side of the ten-acre lot deeded to the McKeys, but the whole piece up to the railroad, including Mr. Hill's and Mrs. Smith's land, was all fenced in together.   One-half of it belonged to the McKey estate and one-half belonged to Mrs. Smith and Mr. Hill, but it was enclosed on all sides and was used for a pasture by the witness.   The fence on the south line between the McKey land and the Bowen land was an old fence which used to blow down ; the pressure of the wind would break it down, and he had to patch it up.   It was an old fence in 1869, made on cedar posts, a straight fence running through from Vincennes Avenue to Grand Boulevard.   The wind would blow it down sometimes three or four lengths at a time. When the street was put through and the fence was moved south they turned the tops of the fence into the ground ; they were so rotten they could not use them again.   When the street was put through, the fence was moved south into Mr. De Lat's garden."

Frank McLeane testified to the same effect as to the existence of the old fence which ran straight through from Vincennes Avenue to Grand Boulevard, immediately south of which was Bowen's land, used as a garden.

The plaintiff then called S. S. Greeley, who testified that he was the surveyor who made the plat pursuant to the order of the court; that he staked the south line of the lots and the north line of the street; and that the stakes were all driven in the grade of the street.   He stated that when he made the survey of McKey's addition he was informed of how the canal trustees had conveyed the whole of the quarter section by the certificates and conveyances above mentioned; that the United States plat of section 3 showed that the N. E. $\frac{1}{4}$ was a fractional quarter section — not full 160 acres, but $157\frac{23}{100}$ acres; and that, before making the survey, it was necessary to know how the canal trustees had conveyed the land.

He further stated: "I found then there were six con-

veyances by the canal trustees to six different parties in the northwest quarter of section 3; two of the pieces were conveyed as the northwest quarter of the northeast quarter and the northeast quarter of the northeast quarter, each being 40 acres, more or less; then there were four conveyances — one conveying the north half of the southwest quarter of the northeast quarter of section 3, containing $19\frac{31}{100}$ acres, more or less; one the south half of the southwest quarter of the northeast quarter, containing $19\frac{31}{100}$ acres, and one the north half of the southeast quarter of the northeast quarter, containing $19\frac{31}{100}$ acres, and one the south half of the southeast quarter of the northeast quarter, containing $19\frac{31}{100}$ acres. The south half of the southwest quarter of the northeast quarter was marked in two ways; it was marked $19\frac{31}{100}$ acres with a pencil mark through it. . . . I then found that the line between what is technically called the north half and the south half of the northwest quarter was not really the middle line of the quarter section, but was a line far enough south of that to give the proportion of 80 acres in the north half and $77\frac{23}{100}$ acres in the south half. I then divided it upon that basis, giving the north half $\frac{80}{157}$ of the width north and south, and giving the south half 77 and a fractional $\frac{1}{157}$ of the width north and south; that made the north part of the quarter section 1334 feet long on the west line, and the south part $1288\frac{2}{10}$ feet, and the true dividing line between the northwest quarter and the southwest quarter of the quarter section, which is properly the south line of the McKey property."

. In reply to a question by the judge, he stated that he put the dividing line " just where the canal trustees seem to have done in their deeds." Witness further testified " that he had made surveys in the northwest quarter of this quarter section, and that he had surveyed the property immediately south of the McKey ten acres, which is in dispute, and that he had located the fence along the north line of said property and the south line of 41st Street as laid out by the village; that he had located this fence running east and west an equal distance between the north and south boundary lines of the quarter section, but that he had done this simply by retrac-

ing the subdivision which had been made before, and that he made the north line of the southwest quarter of the quarter section at the midway point, because he discovered that it was the way it had been made before."

The defendant to maintain the issues on its part introduced Henry McKey, son of Edward McKey, to show that the village of Hyde Park in 1873 opened 41st Street through the land in question, in pursuance of a deed from his father who was the original owner of an undivided half of the McKey tract; that the plaintiff, though a minor at the time, became of age in the year 1874, and did not commence this suit until 1887; that in the meantime the village of Hyde Park proceeded to open and improve the street, to lay sidewalks and to put in sewers without objection or interruption from the plaintiff; that witness was the only agent the McKeys had in the management of their property, and was present at the time the street was laid out; that he saw that the fence had been moved; that more of the street had been taken from the McKey tract than from the land adjoining it on the south; that he thought the location of the fence might have been wrong, and therefore made no objection; and that the location was not questioned until Mr. Greeley informed him of the alleged error of said location, and that the southern line of the lots extended 56 feet below the north line of the street. He also testified that in selling lots in their addition the McKeys followed the description in the plat thereof, but inserted in the deed a condition that they did not warrant the title to any portion of the lots claimed by the village as a part of the street.

In support of its contention that the 23-feet strip involved in this suit was rightfully included within the limits of the street, and that the same is located where it ought to be, the defendant introduced as witnesses McLennan, Rossiter, Lee and Foster, all surveyors of experience. Each of those witnesses testified that the centre line of 41st Street, as laid out by the village of Hyde Park, is the true southern boundary of the McKey tract.

Jacob T. Foster, county surveyor, said : " If he were called

upon to survey the northwest quarter of the northeast quarter, containing forty acres, more or less, he would ascertain the southern line of the quarter by measuring the west line of the quarter section and dividing it in the middle, then measuring the east line of the quarter section and dividing it in the middle, and run a line through from one point to the other, so that if the west line of the quarter section was $2622\frac{1}{2}$ feet long he would make the west line of the quarter quarter one-half of that, and make the south line of the quarter quarter that many feet south of the north line. That is the correct principle in surveying."

The witness McLennan, a surveyor of thirty years, testified that "if this northeast quarter of section 3 be subdivided into four quarters by dividing the quarter section by equally distant lines, such a survey would locate 41st Street in exactly the position where it is now occupied by the village, and in that case the true line between the northwest quarter and the southwest quarter of this northeast quarter of the quarter section would be in the centre of 41st Street as now laid out and occupied."

Defendant's other witnesses testified to the same effect.

Several exceptions were taken to rulings of the court below during the progress of the trial, and also to the general charge to the jury. The jury returned a verdict in favor of the defendant upon which judgment was rendered. The plaintiff then sued out this writ of error.

The first assignment of error, which we think necessary to consider, relates to the following charge of the court:

"If you believe from the evidence that the centre of the street is the centre east and west line of the quarter section, then you are also instructed that it was and still is the true boundary line, and that the plaintiff is not entitled to the land described in the declaration on the theory that the Greeley survey was correct."

He preceded this charge by the following statement:

"In 1873 the village of Hyde Park laid out and opened 41st Street sixty-six feet wide from Grand Boulevard to Vincennes Avenue, the centre of which was a line equidistant from the north and south lines of the quarter section, on the theory that

this line was the true east and west boundary between the four. quarters of the quarter section and the true southern boundary of the McKey tract."

In our opinion that instruction was erroneous. It in effect directed the jury to find that the centre of the street, which is a line equidistant from the north and south lines of the quarter section, is the true southern boundary of the McKey tract, and that the plaintiff was not entitled to recover the premises described in the declaration. The question in this branch of the case is, whether, as is contended by the plaintiff, the line designated in the plat of partition, adopted by the decree of the Chancery Court of Cook County, and approved by the president and board of trustees of the village of Hyde Park, is the true southern boundary of the McKey tract, or whether, as insisted by the defendant, the centre line of 41st Street is that boundary.

The facts adduced by the plaintiff in support of his contention are, that the whole of the northeast quarter of section 3 was owned by the canal commissioners; that it contained, as shown by the plat of the governmental survey, $157\frac{3}{100}$ acres; that there was never any official subdivisional survey of that quarter; that the canal commissioners, by six different deeds, conveyed to different parties and in different quantities the whole quarter section, 80 acres in the north part of the quarter and four times $19\frac{31}{100}$ or $77\frac{23}{100}$ acres in the south part; that S. S. Greeley, a surveyor of forty years' experience, employed by the court commissioners in the partition suit, with those deeds before him, proceeded to survey the property into subdivisions, and, as he testified, by tracing the lines of the various subdivisions just as the canal commissioners seemed to have placed them by their deeds, and, locating it " exactly as it was originally subdivided," he fixed the boundary line twenty-three feet south of that indicated by the centre of the street; and that the line thus certified to by him, adopted by the court, and approved by the president and board of trustees of the village of Hyde Park, coincided exactly with an ancient dividing fence between the McKey tract north and the Bowen tract south, running across the western half of the quarter section,

which, by its rotted condition, furnished a strong presumption that it had been built there by the original purchasers in accordance with a survey made upon the same principle as the one on which the partition plat was prepared.

The evidence as to the true southern boundary is at least conflicting; and its weight and value was a question to be determined by the jury.

Assuming that the rule laid down by the court is the usual one prescribed by the government for the direction of surveying officers in subdividing sections of the public lands for disposal under the public land law, it does not necessarily relate to the subdivision of private lands by the owners after they have been granted by the government without official subdivisions having been made. If the northeast quarter of section 3 had been subdivided by the surveying officers of the United States and recorded on the plat prior to the grant to the State, such general description as that contained in the deed from the canal company to Peck might properly be presumed to convey only an official quarter of the quarter section. But in the absence of such official subdivisional survey the intention of the parties, as to the amount of land conveyed, must, when ascertainable, be recognized and carried out. We think, therefore, the court erred when in its charge it withdrew from the consideration of the jury the evidence which had been submitted, very properly, we think, tending to prove, both by the location of the old fence, and by the deeds of adjoining lands executed by the canal commissioners, the southern boundary line of the premises in dispute.

Another assignment of error urged by counsel for plaintiff is, that the court erred, in giving the following charge to the jury : " If you believe from the evidence that in 1874, when the plaintiff attained his majority, he knew of the action of the village of Hyde Park in laying out, opening and improving the street, and that thereafter and until the partition suit was commenced, in 1881 or later, the street was maintained and used with his knowledge and without objection by him, you are authorized to infer that he consented to a dedication to that use of so much of the McKey tract as is embraced within the present limits of the street." ·

This instruction was repeated in the following more unqualified language: "The plaintiff became of age in 1874, and if the village of Hyde Park took possession of this strip of land in 1873, and he knew of that possession and the continued use and improvement of the street and made no objection; if with full knowledge of everything that was done from 1874, when he was of age, until Mr. Greeley informed him for the first time that he was the owner or part owner of the 23 feet, then he cannot recover as against the village of Hyde Park."

However correct technically, as an abstract proposition, the first part of this charge may be, we do not think the last paragraph of it, above quoted, states the law of Illinois as to what constitutes a dedication of real property in that State, as interpreted by her Supreme Court. In *City of Bloomington* v. *Cemetery Association*, 126 Illinois, 221, 227, 228, the court laid down the principle that mere "non-action will not raise an implication of an intention to dedicate private property to public use, nor will it estop the owner to deny such intention." After repeating the doctrine in the language of preceding cases, the court proceeded thus: "But it is said that he, and his grantee, the plaintiff, should be estopped to deny a dedication because of the public user of the land in question as a part of the street without objection on their part. Had the plaintiff, or its grantor, by any equivocal overt acts or declarations, given evidence of an intention to have the land in question included in the street, and thereby induced the public to use and the city to improve it as a part of the street, possibly the doctrine of estoppel might have been invoked. No such acts or declarations however are shown. All that is proved is mere non-action on their part, or, in other words, a mere omission to assert their title as against the public. Mere non-action will not raise an implication of an intention to dedicate private property to public use, nor will it estop the owner to deny such intention." See, also, *Herhold* v. *City of Chicago*, 108 Illinois, 467; *Peyton* v. *Shaw*, 15 Bradwell (Ill. App.) 192.

In *Kyle* v. *Town of Logan*, 87 Illinois, 64, 66, 67, the court states the same doctrine as follows: "In order to justify a claim that title to a tract of land has been divested by dedi-

cation, the proof should be very satisfactory, either of an actual intention to dedicate or of such acts and declarations as should equitably estop the owner from denying such intention. . . . The owner of the land must do some act, or suffer some act to be done, from which it can be fairly inferred he intended a dedication to the public. Acquiescence, with knowledge of the use by the public, without objection, is not, as held by the Circuit Court, conclusive evidence of a dedication, for it may be rebutted. The second instruction for appellees, announcing this principle, was erroneous. A dedication, from an user of twenty years, and for a shorter time, may be presumed, but it is not conclusive. The owner might show any fact which would overcome the presumption."

In *City of Chicago* v. *Johnson*, 98 Illinois, 618, 624, 625, the court laid down the doctrine on this subject as follows: "A dedication of private property to public uses will not be held to be established, except upon satisfactory proof, either of an actual dedication, or of such acts or declarations as should equitably estop the owner from denying such intention. This proposition is so clearly the law, it needs the citation of no authorities in its support."

In the still earlier case of *McIntyre* v. *Storey*, 80 Illinois, 127, 130, the court said: "A dedication of the right of way for a highway may be variously proven. It may be established by grant or written instrument, or by the acts and declarations of the owner of the premises. It may be inferred from long and uninterrupted user by the public, with the knowledge and consent of the owner; but this court has had frequent occasion to say, there must be a clear intent shown to make the dedication. The evidence offered for that purpose should be clear, either of an actual intent so to do, or of such acts or declarations as will equitably estop the owner from denying such intent;" citing *Marcy* v. *Taylor*, 19 Illinois, 634; *Kelly* v. *City of Chicago*, 48 Illinois, 388; *Godfrey* v. *City of Alton*, 12 Illinois, 29.

In *City of Chicago* v. *Stinson*, 124 Illinois, 510, 513, 514, the court said: "Before title can be divested by dedication, the proof must be very satisfactory either of an actual

intention to dedicate, or of such acts or declarations as should equitably estop the owner from denying such intention;" citing *Kelly* v. *City of Chicago*, 48 Illinois, 388. "Long use and long acquiescence in such use by the owner of land are sometimes regarded as, in and of themselves, evidence of a dedication. In cases, however, of implied or presumed acquiescence or consent on the part of the owner, very much depends upon the location of the road or street, the amount of travel, the nature of the use of the public, the rights asserted by the public, *the knowledge of the owner*, and like circumstances;" citing *Onstott* v. *Murray*, 22 Iowa, 457. "We have said: 'Acquiescence, with knowledge of the use by the public, without objection, is not . . . conclusive evidence of a dedication, for it may be rebutted;' citing *Kyle* v. *Town of Logan*, 87 Illinois, 64. The two prominent elements to be considered, in determining whether there has been a common law dedication or not, are the intention of the owner to dedicate, and the acceptance by the public of the intended dedication. 'The owner of the land must do some act, or suffer some act to be done, from which it can be fairly inferred he intended a dedication to the public;'" citing *Kyle* v. *Town of Logan, supra.*

Under these authorities we think the court below committed error in that part of the charge to which we have just referred. The principle established by them is, that a dedication of a street or highway may be inferred from a long and uninterrupted user by the public with the knowledge and consent of the owner; but that mere knowledge and non-action or failure to assert one's rights are not conclusive evidence of such dedication, for they may be rebutted; and the party is always allowed to show facts and circumstances to overcome such presumption.

In the case at bar the facts were shown that at the time the village opened the street through the property of the plaintiff he was a minor and a non-resident; that though he became of age the year after, he was then, and up to a short time before this suit was brought, a non-resident, living at Janesville, Wisconsin; and there was no evidence to show that he

had ever until then seen the premises or been in Chicago. There was evidence also to show that during a great part of that period he was a co-tenant with other minors who resided out of the State of Illinois. Whether these facts were sufficient to explain the non-action of the plaintiff, and to negative the presumption of a dedication or not, was a question for the jury, which the court, by its charge, in effect withdrew from their consideration.

We do not deem it necessary to refer to any of the other assignments of error, as those we have discussed are sufficient to dispose of the case.

It results from what we have said that the judgment of the court below should be, and it hereby is,

*Reversed, with a direction to order a new trial, and to take such further proceedings as shall not be inconsistent with this opinion.*