## SYNOPSIS OF THE CASE

**2011 MT 244, DA 11-0190:** **GARY MYERS**, Plaintiff and Appellant, **v. W. STEPHEN DEE, VICTORIA R. DEE AND ALL OTHER PERSONS UNKNOWN**, claiming or who might claim any right, title, estate, or interest in, or lien or encumbrance upon, the real property described in the Complaint or any thereof, adverse to the Plaintiff's ownership, Defendants and Appellees.[1]

Myers filed an action in the District Court for the First Judicial District, Lewis and Clark County, asking the court to grant him access to his landlocked property across property owned by the Dees based on the right of eminent domain. Section 70-30-102(36), MCA, provides in part that "the right of eminent domain may be exercised for the following public uses: . . . private roads leading from highways to residences or farms . . . ." The District Court granted the Dees' Motion for Summary Judgment on the basis that the dilapidated buildings on Myers' property that had not been inhabited for several decades did not qualify as a residence.

On appeal, the Supreme Court held that since the word "residence" was not defined in the MCAs for purposes of § 70-30-102(36), MCA, that term must be construed according to its plain meaning. Thus, under the rationale of two prior Supreme Court cases and the dictionary definitions of the word, the Supreme Court defined "residence" in § 70-30-102(36), MCA, to refer to a habitable structure or dwelling place—i.e., a place where people are living. The Supreme Court also determined that while normally the question of whether there is a residence on the property would be a question of fact for the jury, in this case it was undisputed that the buildings on Myers' property were uninhabitable and that no one had lived in them for several decades. Therefore, the Supreme Court held that because there was no residence on Myers' property, access could not be granted across the Dees' property based on the eminent domain statutes.

---

[1] This synopsis has been prepared for the convenience of the reader. It constitutes no part of the Opinion of the Supreme Court and may not be cited as precedent.

DA 11-0190

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 244

GARY MYERS,

       Plaintiff and Appellant,

   v.

W. STEPHEN DEE, VICTORIA R. DEE AND ALL
OTHER PERSONS UNKNOWN, claiming or who
might claim any right, title, estate, or interest in,
or lien or encumbrance upon, the real property
described in the Complaint or any thereof,
adverse to the Plaintiff's ownership,

       Defendants and Appellees.

| APPEAL FROM: | District Court of the First Judicial District, |
| --- | --- |
| | In and For the County of Lewis and Clark, Cause No. BDV-2009-610 |
| | Honorable Jeffrey M. Sherlock, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          David B. Gallik, Gallik Law Office, PLLC, Helena, Montana

      For Appellee:

          Rick Pyfer, Patrick T. Fox, Doubek & Pyfer, LLP, Helena, Montana

                 Submitted on Briefs:  August 17, 2011

                            Decided:  October 4, 2011

Filed:

                    _____
                             Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Gary Myers filed this action in the District Court for the First Judicial District, Lewis and Clark County, seeking to condemn a strip of land owned by Stephen and Victoria Dee (the Dees) to create a private road allowing access to property owned by Myers. The court granted the Dees' Motion for Summary Judgment and Myers appeals. We affirm.

¶2     Myers raises two issues on appeal which we have restated as follows:

¶3     1.   Whether § 70-30-102(36), MCA, requires proof of an existing farm or residence.

¶4     2.   Whether the existence of a farm or residence and the necessity of a road to access that farm or residence are determinations for the jury.

## Factual and Procedural Background

¶5     George Vincent inherited a 160-acre parcel of mountainous property near Canyon Creek in Lewis and Clark County (tract B in the diagram below). His three sisters inherited the contiguous 160-acre parcel as tenants in common (tract A in the diagram below). Myers purchased a one-third interest in tract A from one of the sisters, while Vincent purchased the remaining two-thirds interest in tract A from the other two sisters.

¶6     In April 2000, Myers brought a partition action against Vincent regarding tract A. While the partition action was pending, Vincent sold tract B and his two-thirds interest in tract A to the Dees. The Dees were then added as real parties in interest in the partition action. Over the next several years, the District Court issued numerous orders in the

matter, one of which was appealed to this Court. *See Myers v. Vincent*, 2004 MT 176N, 2004 Mont. LEXIS 343.

¶7      Eventually, on January 23, 2008, the District Court entered an order awarding the southernmost one-third of tract A to Myers and the northernmost two-thirds of tract A to the Dees. The court also denied Myers access from the county road (also referred to as Empire Road or Lost Horse Creek Road) to his property. Since the county road runs through tract B, which is owned entirely by the Dees, this access would have required Meyers to travel across 62 feet of the Dees' tract B property to reach Myers' portion of tract A. The District Court denied Myers access to his property across tract B because tract B was outside of the parcel of property partitioned. The court also determined that Myers had not established that either an easement by necessity or an implied easement existed across the Dees' property. This ruling of the court has not been appealed.



¶8      Myers filed the present action against the Dees on July 10, 2009. In his Complaint, Myers asked the court to grant him access to his property across the Dees'

tract B property based on the right of eminent domain. Myers' property contains several dilapidated buildings including a historic cabin in which no one has lived for decades. Myers alleged that the cabin qualifies as a residence, and that pursuant to §§ 70-30-102(36) and -107, MCA, the right of eminent domain may be exercised to create a private road leading from a highway to a residence or farm.

¶9 On May 20, 2010, the Dees moved for summary judgment arguing that because the historic cabin is uninhabitable, no residence or farm exists on Myers' property, and the eminent domain statutes cannot be applied. After a hearing on the matter, the District Court determined that Myers was required to make a prima facie showing under § 70-30-102(36), MCA, as to the current existence of a residence or farm on the property before he was entitled to a jury trial under § 70-30-107, MCA, relating to the necessity and value of the property to be taken. Because Myers failed to make such a showing, the court granted the Dees' Motion for Summary Judgment and awarded the Dees their costs. Myers appeals.

**Standard of Review**

¶10 We review a district court's grant or denial of a summary judgment motion de novo. *Lee v. Great Divide Ins. Co.*, 2008 MT 80, ¶ 9, 342 Mont. 147, 182 P.3d 41 (citing *Farmers Union Mut. Ins. Co. v. Horton*, 2003 MT 79, ¶ 10, 315 Mont. 43, 67 P.3d 285). Under M. R. Civ. P. 56(c), summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Moreover, the party moving for summary judgment has the initial burden of proving that no genuine issues of material fact exist. *See Roy v. Blackfoot Telephone Co-op.*, 2004

4

MT 316, ¶ 11, 324 Mont. 30, 101 P.3d 301. The burden then shifts to the non-moving party to prove by more than mere denial and speculation that a genuine issue of material fact does exist. *Roy*, ¶ 11.

**Issue 1.**

¶11 *Whether § 70-30-102(36), MCA, requires proof of an existing farm or residence.*

¶12 Eminent domain is the right to take private property for public use. *Richter v. Rose*, 1998 MT 165, ¶ 15, 289 Mont. 379, 962 P.2d 583 (citing § 70-30-101, MCA). We noted in *Richter*, that the procedures for taking property pursuant to eminent domain are entirely statutory in Montana. *Richter*, ¶ 15 (citing Title 70, chapter 30, MCA). And, under Montana's eminent domain statutes, a private right exists to create a road leading from a highway to landlocked property containing a residence or farm. *Richter*, ¶ 15 (citing § 70-30-102(6), MCA (now § 70-30-102(36), MCA)).

¶13 In this case, Myers contends that the historic cabin on his property is a residence for purposes of § 70-30-102(36), MCA. He argues that the statutes governing eminent domain do not require proof that a farm or residence is presently in use before eminent domain may be applied. Hence, Myers contends that the District Court erred in reading that requirement into the statutes and in granting the Dees' Motion for Summary Judgment.

¶14 The Dees argue on the other hand that the eminent domain statutes require a showing of a presently-used farm or residence. The Dees maintain that on the facts before us here, because there is no presently-used farm or residence on Myers' property, the District Court was correct in granting their Motion for Summary Judgment.

5

¶15    There are no cases in Montana that define the term "residence" for purposes of § 70-30-102(36), MCA.  There are, however, two cases that define the term "farm" as used in that statute.

¶16    In *Groundwater v. Wright*, 180 Mont. 27, 588 P.2d 1003 (1979), the plaintiff owned a tract of land with no access, so he sought to condemn an access route from a county road to his property over defendant's land using the eminent domain statutes.[1] The evidence produced at trial showed that plaintiff's property was not being farmed or used as a residence at that time, although the plaintiff did testify that he would like to build a home on the property when he retires.  Because the jury found that there presently was no necessity for the road, as there was no farm or residence on the property, the court entered judgment for defendants.  *Groundwater*, 180 Mont. at 28-30, 588 P.2d at 1004-05.

¶17    On appeal, this Court stated that in order to prevail, plaintiff must show that eminent domain would be exercised to provide necessary access from a highway to a residence or farm.  The Court held that because the evidence presented showed that the land was not presently being farmed or used as a residence, plaintiff failed to establish that his proposed condemnation was necessary.  *Groundwater*, 180 Mont. at 29-30, 588 P.2d at 1004-05.

---

[1]    Myers attempts to distinguish *Groundwater* from the instant case claiming that *Groundwater* was decided prior to the enactment of the statutes at issue here.  However, the statutes cited in *Groundwater*—§§ 93-9902(6) and 93-9923, RCM (1947)—are the predecessors to §§ 70-30-102(36) and -107, MCA, respectively, and contain nearly identical language.

¶18     Similarly, in the *Richter* case, plaintiffs sought a declaration that a public right-of-way had been established across defendants' property in the early 1900s or, alternatively, a condemnation order granting plaintiffs an easement across the property. The district court rejected the public right-of-way claim, but entered a preliminary condemnation order and judgment in plaintiffs' favor. *Richter*, ¶ 1.

¶19     On appeal, we analyzed the term "farm" to determine whether the facts in that case fit within the requirements of the eminent domain statutes. We noted in *Richter* that while "farm" is not defined in Title 70, chapter 30, MCA, it is defined in several other chapters of the MCA. We rejected each of those definitions, however, because they are limited in their application to the particular statutory scheme in which they are found. *Richter*, ¶¶ 17-20. "[W]hen a word is defined in any part of the MCA, the same definition applies wherever the word appears *unless 'a contrary intention plainly appears.'*" *Richter*, ¶ 17 (quoting § 1-2-107, MCA) (emphasis added).

¶20     Because "farm" was not defined for purposes of § 70-30-102(6), MCA (now § 70-30-102(36), MCA) and because other definitions of the term in the MCAs were not applicable to this statute, we concluded in *Richter* that we must construe the term according to its plain meaning. *Richter*, ¶ 21 (citing § 1-2-106, MCA; *State v. Nye*, 283 Mont. 505, 510, 943 P.2d 96, 99 (1997)). And, based on the plain meaning of the term "farm," we held in *Richter* that because plaintiffs had not prepared, fertilized, tilled or otherwise cultivated their property for agricultural purposes, the property could not be considered a "farm." *Richter*, ¶ 22. Consequently, we reversed the district court's

condemnation order because plaintiffs failed to establish a public use on behalf of which eminent domain could be exercised. *Richter*, ¶ 23.

¶21 Just as the term "farm" is not defined in the eminent domain statutes for purposes of § 70-30-102(36), MCA, the term "residence" is not defined there either. While "residence" is defined in other sections of the MCA, none of those definitions are applicable here as each of those definitions is expressly limited in its application to the section of the MCA in which it appears,[2] with the exception of § 1-1-215, MCA. And, even though § 1-1-215, MCA, does not contain the limiting language of the other statutory definitions of the term "residence," it is not applicable in this case as it refers to an individual's *legal* residence as, for example, pointing out that a minor's legal residence is with the minor's parents.

¶22 As we did in *Richter* with the term "farm," we must construe the term "residence" according to its plain meaning because it is not defined for purposes of § 70-30-102(36), MCA, and because other definitions of the term in the MCAs are not applicable in this case. In cases too numerous to mention here, we have utilized dictionaries when seeking to define the common use and meaning of a term. *Ravalli County v. Erickson*, 2004 MT

---

[2] Section 10-2-501, MCA, defines "residence" in terms of interment allowances for veterans; § 15-30-2336, MCA, defines "residence" in terms of property tax levies; § 15-63-102, MCA, limits that definition of "residence" to Title 15, chapter 63; § 42-10-121, MCA, defines "residence" in terms of the state in which an adoptive parent resides; § 46-23-502, MCA, limits that definition of "residence" to Title 46, chapter 18, part 2 and chapter 23, part 5; § 61-3-712, MCA, limits that definition of "residence" to §§ 61-3-711 through -733, MCA; § 61-8-102, MCA, limits that definition of "residence" to Title 61, chapter 8; § 70-19-426, MCA, limits that definition of "residence" to §§ 70-19-426 through -428, MCA; and § 70-24-103, MCA, limits that definition of "residence" to Title 70, chapter 24, MCA.

8

35, ¶ 13, 320 Mont. 31, 85 P.3d 772 (citing *Town of Whitehall v. Preece*, 1998 MT 53, ¶¶ 20-21, 288 Mont. 55, 956 P.2d 743).  We will utilize this same method to determine the plain meaning of the term "residence" as that term is used in § 70-30-102(36), MCA.

¶23    *Webster's New American Dictionary* 445 (Merriam-Webster, Inc. 1995) defines "residence" as "the act or fact of residing in a place as a dweller or in discharge of a duty or an obligation," "the place where one actually lives," or "a building used as a home." Similarly, *Black's Law Dictionary* 1423 (Bryan A. Garner ed., 9th ed., Thomson Reuters 2009) defines "residence" as "[t]he act or fact of living in a given place for some time," "[t]he place where one actually lives, as distinguished from a domicile," or "[a] house or other fixed abode; a dwelling."

¶24    Under the rationale of *Groundwater* and *Richter*, and with the foregoing dictionary definitions in mind, we conclude that requiring some sort of on-going use or physical activity to constitute a residence is not an unreasonable interpretation for purposes of § 70-30-102(36), MCA.   Thus, we further conclude that the term "residence" in § 70-30-102(36), MCA, refers to a habitable structure or dwelling place—i.e., a place where people are living.

¶25    Accordingly, we hold that the District Court did not err in concluding that § 70-30-102(36), MCA, requires proof of an existing farm or residence for application of the eminent domain statutes.

**Issue 2.**

¶26    *Whether the existence of a farm or residence and the necessity of a road to access that farm or residence are determinations for the jury.*

¶27 The District Court concluded that Myers must make a prima facie showing under § 70-30-102(36), MCA, as to the current existence of a farm or residence on his property before he is entitled to a jury trial under § 70-30-107, MCA, relating to the necessity and value of the property taken. Because Myers failed to make such a showing, the court granted summary judgment in favor of the Dees.

¶28 Myers argues that this was error on the District Court's part because the determination of whether there is a farm or residence on his property is inextricably intertwined with the necessity for access which is statutorily left to the determination of the jury. The Dees argue on the other hand that a necessity analysis under § 70-30-107, MCA, is not required here because it is undisputed that there is not a presently-used residence on Myers' property.

¶29 Section 70-30-107, MCA, provides:

> **Private roads.** Private roads may be opened in the manner prescribed by [Title 70, chapter 30, MCA], but in every case the necessity of the road and the amount of all damage to be sustained by the opening of the road *must be first determined by a jury*, and the amount of damages, together with the expenses of the proceeding, must be paid by the person to be benefited. [Emphasis added.]

In addition, we stated in *Groundwater* that "[t]he question of necessity is one of fact to be determined as other questions of fact in the light of all the evidence." *Groundwater*, 180 Mont. at 30, 588 P.2d at 1004 (quoting *Montana Power Co. v. Bokma*, 153 Mont. 390, 397-98, 457 P.2d 769, 774 (1969)).

¶30 We conclude that the District Court erred here because whether there is a residence on the property as we defined it in the previous issue, *see* ¶ 24, and whether a

10

necessity exists to condemn another's property to create a road to access that residence are generally questions of fact for a jury to determine. Nevertheless, we affirm the District Court on this issue because it is undisputed that the historic cabin on Myers' property has not been lived in for decades. It is also undisputed that the cabin has no windows or doors, no running water, and no sanitary system, thus it is completely uninhabitable. As such, the cabin cannot be considered a "residence" for purposes of § 70-30-102(36), MCA.

¶31 In other words, had there been disputed issues of material fact about whether the historic cabin was a farm or residence, as our case law defines those terms *(see Richter, Groundwater* and ¶ 24 above), then a jury should have resolved that factual issue before going on to resolve matters of necessity, damages and expenses under § 70-30-107, MCA. Here, however, Myers failed to first establish the predicate that there was a genuine factual issue regarding the existence of a farm or residence under § 70-30-102(36), MCA.

¶32 We will not reverse a district court's decision when it reaches the correct result, even if it reached that result for the wrong reason. *In re Marriage of Szafryk*, 2010 MT 90, ¶ 18, 356 Mont. 141, 232 P.3d 361 (citing *Wells Fargo Bank v. Talmage*, 2007 MT 45, ¶ 23, 336 Mont. 125, 152 P.3d 1275).

¶33 Accordingly, we affirm the District Court's decision to grant summary judgment in favor of the Dees.

¶34 Affirmed.

/S/ JAMES C. NELSON


We Concur:


/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE