DA 10-0482

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 118

GARY HOFF,

      Plaintiff, Appellee and Cross Appellant,

  v.

LAKE COUNTY ABSTRACT & TITLE COMPANY,
a corporation;

      Defendant and Appellee,

    and

COUNTRYWIDE HOME LOANS, INC.,
a corporation; DOES I through X inclusive,
individuals, corporations and partnerships,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DV 09-188
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Christian T. Nygren, Milodragovich, Dale, Steinbrenner & Nygren, P.C.,
Missoula, Montana (Countrywide Home Loans, Inc.)

      For Appellees:

            Martin S. King, Worden Thane P.C., Missoula, Montana (Gary Hoff)

            John A. Mercer, Turnage & Mercer, PLLP, Polson, Montana (Lake
County Abstract & Title Co.)

Submitted on Briefs:  April 13, 2011

Decided: June 1, 2011

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1      Countrywide Home Loans, Inc. (Countrywide) appeals from an order of the Twentieth Judicial District, Lake County, denying its motion under M. R. Civ. P. 55(c) to set aside an entry of default and its motion under M. R. Civ. P. 60(b) for relief from default judgment. Gary Hoff (Hoff) cross-appeals the court's denial of attorney fees.

¶2      Countrywide raises the following two issues on appeal:

¶3      *Did the District Court slightly abuse its discretion by denying Countrywide's motion to set aside the entry of default pursuant to M. R. Civ. P. 55(c)?*

¶4      *Did the District Court slightly abuse its discretion by denying Countrywide's motion for relief from default judgment under M. R. Civ. P. 60(b)?*

¶5      Hoff raises two additional issues on cross-appeal:

¶6      *Did the District Court properly order default judgment against Countrywide?*

¶7      *Did the District Court abuse its discretion when it denied Hoff's motion for the assessment of attorney fees against Countrywide?*

FACTUAL AND PROCEDURAL BACKGROUND

¶8      Hoff filed a complaint alleging contract and negligence claims against Countrywide and Lake County Abstract & Title Company (Lake County Title) on June 23, 2009. Countrywide failed to appear or answer within the 20 days permitted by M. R. Civ. P. 12(a). Hoff moved for entry of default against Countrywide on August 25, 2009. The clerk of court entered default on August 25, 2009. Countrywide appeared on November 2, 2009, and began its attempt to reverse the default proceedings with a M. R. Civ. P. 55(c) motion and

then a M. R. Civ. P. 60(b) motion. The court denied Countrywide's motions and entered default judgment against Countrywide on September 10, 2010. Countrywide appeals.

¶9 Hoff executed a buy-sell agreement for the purchase of real property located in Lake County from George Beebe in 2004. The original buy-sell agreement retained a life estate in Beebe. Hoff claims that he and Beebe executed an amendment to the buy-sell agreement that removed Beebe's life estate. Countrywide claims that the parties failed to put the agreement in writing. Hoff has attached to his complaint two written documents, signed by Hoff and Beebe, that amend the buy-sell agreement by removing the Beebe life estate. The final warranty deed that the parties recorded at closing did not include the amendatory documents, however, and retained the life estate in favor of Beebe.

¶10 Countrywide, a nationwide lending corporation, had loaned Hoff $207,000 for the purchase of the property. The Countrywide loan documents required that Hoff be vested with title to the real property in fee simple. The documents provided that title defects, like an existent life estate, constituted a default on the loan. Hoff had purchased a policy of title insurance in favor of Countrywide from Lake County Title. Lake County Title issued and delivered the policy to Countrywide shortly after closing. The policy disclosed Beebe's life estate. Countrywide did not notify Hoff of Beebe's life estate or notify Hoff that the life estate adversely affected the loan.

¶11 Hoff made regular payments on the Countrywide loan for about five years. Hoff listed the property for sale in June 2007 for $459,000. Three potential buyers showed interest in the property. Hoff learned of the Beebe life estate for the first time in July 2007

4

while attempting to sell the property. Beebe refused Hoff's request to remove voluntarily the life estate.

¶12     Hoff's counsel, Martin King, mailed and e-mailed a letter to Countrywide representative Kimberly Harvey on May 1, 2009. King informed Countrywide of the life estate and requested a modification to the loan's interest rate until the life estate issue could be resolved. King followed up on the request on May 15, 2009. Countrywide responded on May 23, 2009, denying the request to modify the loan's terms.

¶13     Hoff filed a complaint on June 23, 2009, in District Court. King e-mailed Harvey on July 8, 2009, and again requested that Countrywide modify the loan agreement. King attached the complaint to this e-mail and asked Harvey whether she was authorized to accept service of the complaint and summons on Countrywide's behalf. Harvey responded in an e-mail later that day that King would have to serve Countrywide's registered agent, CT Corporation Systems. Hoff properly served Countrywide through CT Corporation Systems on July 30, 2009. The summons informed that Hoff might seek a default judgment if Countrywide did not appear or answer within 20 days. Countrywide did not appear or answer within 20 days as required by M. R. Civ. P. 12(a). Hoff moved for an entry of default on August 25, 2009. The clerk of court entered default on August 25, 2009.

¶14     Hoff discontinued making payments on the Countrywide loan in the summer of 2009. Countrywide sent Hoff a default notice, accelerated the loan balance, threatened foreclosure, and filed damaging credit reports against Hoff. Attorney Charles Peterson telephoned King on September 15, 2009, and indicated that he represented Countrywide. Peterson asked King

to set aside the default voluntarily. King refused to consent to setting aside the default, but remained willing to negotiate a modification to the loan and settlement of the claims. King sent Countrywide a letter on October 6, 2009, with an offer to settle all the claims. Countrywide did not reply.

¶15 Countrywide first appeared on November 2, 2009, by filing a motion to set aside the default pursuant to M. R. Civ. P. 55(c). Countrywide's brief asserted that Hoff had failed to comply with the requirements of M. R. Civ. P. 55(a) and that the default should be set aside for good cause. The Court denied Countrywide's motion on December 22, 2009.

¶16 Countrywide then filed a M. R. Civ. P. 60(b) motion to set aside the entry of default for mistake or excusable neglect on February 26, 2010. Countrywide argued that the entry of default should be set aside for excusable neglect because its litigation specialist, Michael Parrent, failed to follow company procedures and failed to take action on the complaint. Countrywide later terminated Parrent's employment for his failures. Hoff opposed the M. R. Civ. P. 60(b) motion as an attempt to re-litigate the court's December 22, 2009, denial of Countrywide's motion to set aside the entry of default. The court denied Countrywide's M. R. Civ. P. 60(b) motion on April 13, 2010, without providing any additional reasoning or analysis.

¶17 Hoff filed a motion and application for default judgment on March 24, 2010, pursuant to M. R. Civ. P. 55(b)(2). Hoff also requested attorney fees under the Countrywide trust indenture and the statutory reciprocal fees provision at § 28-3-704, MCA. The court denied Hoff's request for costs and fees on July 23, 2010. Hoff cross-appeals the denial of attorney

6

fees. The court awarded Hoff default judgment against Countrywide on September 10, 2010. Countrywide did not seek relief from the court's September 10, 2010, award of default judgment. Hoff raises as an issue on cross-appeal, nonetheless, whether the District Court properly granted him default judgment.

## STANDARD OF REVIEW

¶18 The party seeking to set aside an entry of default bears the burden of proof. *Engelsberger v. Lake Co.,* 2007 MT 211, ¶ 8, 339 Mont. 22, 167 P.3d 902. When a trial court grants a motion to set aside a default, the court's ruling will only be set aside upon a showing of manifest abuse of discretion. *Id.* A trial court's denial of a motion to set aside a default will be reviewed according to a slight abuse of discretion standard. *Id.* We review for correctness a district court's conclusions of law pertaining to the recovery of attorney fees. *Chase v. Bearpaw Ranch Assn.,* 2006 MT 67, ¶ 14, 331 Mont. 421, 133 P.3d 190.

## DISCUSSION

¶19 *Did the District Court slightly abuse its discretion by denying Countrywide's motion to set aside the default judgment under M. R. Civ. P. 55(c)?*

¶20 M. R. Civ. P. 55(c) provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." To determine the existence of good cause for the purposes of M. R. Civ. P. 55(c), the Court considers (1) whether the default was willful, (2) whether the

plaintiff would be prejudiced if the default is set aside, and (3) whether the defendant has presented a meritorious defense to the plaintiff's claim. *Crib v. Matlock Commun., Inc.,* 236 Mont 27, 30, 768 P.2d 337, 339 (1989); *Engelsberger*, ¶ 12. We balance the interests of the defendant in adjudication on the merits with the public's interest in orderly and timely administration of justice. *Essex Ins. Co. v. Jaycie, Inc.*, 2004 MT 278, ¶ 10, 323 Mont. 231, 99 P.3d 651 (citing *Cribb,* 236 Mont. at 30, 768 P.2d at 339). We apply the M. R. Civ. P. 55(c) good cause standard flexibly and leniently because an entry of default is an interlocutory order that does not determine rights or remedies all by itself. *Id.*; *Engelsberger*, ¶ 16.

¶21 Countrywide argues that good cause existed because (1) Peterson's communications with King within one month of default shows that its default lacked willfulness, (2) Hoff will not be prejudiced by setting aside the default because it will force him to try the case on its merits, and (3) it has a meritorious defense that Lake County Title erroneously prepared the closing documents. All three factors of the good cause test must be considered and balanced to determine whether an entry of default should be set aside. *Engelsberger,* ¶ 17.

¶22 Countrywide first argues that it did not commit a willful default as evidenced by Peterson's communication with Hoff's attorney, King, within one month of the entry of default. The District Court determined that Countrywide willfully defaulted because it did not contact King for nearly two months after being served with the complaint and because it refused King's attempts to resolve the matter short of litigation.

8

¶23    We upheld the district court's determination in *Essex* that the defendant bar owner willfully had defaulted when the bar owner failed to answer his insurer's petition for a declaratory judgment that coverage did not exist under the policy. *Essex,* ¶ 16. The insurer properly had served both the bar owner and manager with a summons and complaint. *Id.* at ¶ 4. The insurer had made numerous attempts to contact the bar owner, including sending letters and leaving phone messages, before filing a motion to enter default. *Id.* at ¶ 4.

¶24    The District Court found that Hoff's counsel had mailed and e-mailed Countrywide on May 1, 2009, in attempt to resolve the dispute short of litigation. King followed up on the request on May 15, 2009, and again on July 8, 2009. King contacted Countrywide's representative, Kimberly Harvey, on July 8, 2009, to ask whether she could accept service of the complaint. King attached a copy of the complaint to the e-mail. King properly served CT Corporations Systems on July 30, 2009. The summons informed Countrywide that Hoff would seek a default judgment if it did not appear or answer within 20 days as required by M. R. Civ. P. 12(a).

¶25    Countrywide's attorney, Charles Peterson, contacted King on September 15, 2009, to request that King consent to setting aside the entry of default. King refused, but remained open to settle the claims. King followed up with an offer to settle the claims with a letter on October 6, 2009. Countrywide did not appear until November 2, 2009, when it filed a motion to set aside the entry of default in the District Court. Ninety-five days had passed since Hoff had served Countrywide with process. Seventy-five days had passed since Countrywide's answer was due, and 48 days had passed since King informed Peterson that

he would not consent to setting aside the default. We reject Countrywide's argument that Peterson's single phone call to King almost two months after it received service of the complaint constitutes diligence.

¶26 Countrywide also attempts to distinguish *Essex* by arguing that Hoff did not provide it with additional notice before he moved for entry of default on August 25, 2009. We disagree that *Essex* requires a litigant to provide additional notice before moving for entry of default. M. R. Civ. P. 12(a) clearly provides that Countrywide had 20 days after the service of the summons and complaint to file its answer or otherwise appear. The summons that Hoff properly had served on Countrywide also stated that failure to answer the complaint within 20 days could result in judgment by default. Countrywide's office mismanagement, neglect, and inattentiveness on the part of its high-level employees rose to a sufficient level of carelessness as to constitute willfulness. *Engelsberger,* ¶ 15. We affirm the District Court's conclusion that Countrywide acted willfully when it did not respond to the summons and complaint.

¶27 We next consider the prejudice to the plaintiff. *Essex,* ¶ 14. The District Court concluded that Hoff had been burdened by delay, legal costs and attorney fees in seeking the default. Countrywide waited 69 days before filing its motion to set aside the default on November 2, 2009. Hoff suffered accrued legal costs and fees, potential accrued interest on his loan, negative credit reports on his record, and the inability to sell his burdened land. Countrywide's willful delay unnecessarily prejudiced Hoff.

10

¶28    Finally, we consider whether Countrywide has a meritorious defense. *Essex,* ¶ 14. Countrywide does not have to demonstrate a likelihood of ultimate success on the merits of its defense, and the Court need not discuss the merits of the defense beyond finding whether a prima facie defense exists. *Id*. Countrywide argues that Lake County Title bears the responsibility for the failure at closing to remove the Beebe life estate. The District Court rejected Countrywide's defense because Countrywide conceded that it had prepared the loan documents.

¶29    We disagree with Countrywide's argument that we must presume that it has a meritorious defense because no factual basis exists to support the allegations for its liability. The record demonstrates that the title insurance policy issued by Lake County Title and delivered to Countrywide disclosed the Beebe life estate. Countrywide approved the loan without disclosing the Beebe life estate to Hoff even though Countrywide's loan documents required that Hoff own the property in fee simple.

¶30    We have considered the three *Cribb* factors and conclude that good cause does not exist to set aside the entry of default. Countrywide willfully disregarded the judicial process when it failed to answer after being served properly. We reject its excuse that it did not act willfully, but only failed to hire and supervise a competent employee to manage its litigation. The fact that Countrywide may not have borne the full extent of liability had it actually litigated Hoff's claims represents the only *Cribb* factor that slightly weighs in Countrywide's favor. Countrywide may have reduced its liability exposure by answering the complaint and defending. Countrywide has not established, however, that it possessed a meritorious

11

defense that would have eliminated completely its liability. We will not set aside the entry of default where Countrywide has "slumbered on [its] rights and ignored the judicial machinery established by law." *Sun Mt. Sports, Inc. v. Gore,* 2004 MT 56*, ¶* 21, 320 Mont. 196, 85 P.3d 1286.

¶31 *Did the District Court slightly abuse its discretion by denying Countrywide's motion to set aside the default judgment under M. R. Civ. P. 60(b)?*

¶32 M. R. Civ. P. 60(b) provides that a "court may relieve a party . . . from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect . . . or (6) any other reason justifying relief from the operation of the judgment." Countrywide filed its M. R. Civ. P. 60(b) motion on February 26, 2010. The court had not ordered a default judgment at the time Countrywide requested relief pursuant to M. R. Civ. P. 60(b). Only an entry of default existed at that time. An entry of default constitutes an interlocutory judgment. *Essex,* ¶ 10. An interlocutory judgment does not constitute a "final judgment" under M. R. Civ. P. 60(b).

¶33 Hoff correctly pointed out that Countrywide's M. R. Civ. P. 60(b) motion simply attempted to re-litigate the court's December 22, 2009, denial of Countrywide's M. R. Civ. P. 55(c) motion to set aside the entry of default. Hoff did not apply for default judgment against Countrywide pursuant to M. R. Civ. P. 55(b)(2) until March 24, 2010. The court denied Countrywide's M. R. Civ. P. 60(b) motion on April 13, 2010. We will not analyze Countrywide's procedurally defective M. R. Civ. P. 60(b) motion. No default judgment

existed when Countrywide moved for relief from judgment pursuant to M. R. Civ. P. 60(b). We affirm the District Court.

¶34 *Did the District Court properly order default judgment against Countrywide?*

¶35 Hoff raises this issue on cross-appeal. We note that Hoff prevailed before the District Court in obtaining default judgment when the District Court ordered default judgment against Countrywide on September 10, 2010. Countrywide did not move for relief under M. R. Civ. P. 60(b) from the District Court's final judgment of September 10, 2010. Hoff's decision to raise the issue on cross appeal makes no sense in light of the fact that it prevailed before the District Court. We do not address an issue raised for the first time on appeal. *Peterman v. Herbalife Intl., Inc.*, 2010 MT 142, ¶ 20, 356 Mont. 542, 234 P.3d 898.

¶36 *Did the District Court abuse its discretion when it denied Hoff's motion for the assessment of attorney fees against Countrywide?*

¶37 Hoff cross-appeals the District Court's denial of attorney fees. Hoff argues that a provision in the Countrywide trust indenture and the reciprocal fees provision at § 28-3-704, MCA, entitle him to an award of his attorney fees. The trust indenture provides that Countrywide may charge Hoff fees, including attorney fees, for services performed "in connection with [Hoff's] default." The provision, which bears the title "Loan Charges," applies only to default situations. Hoff defaulted on the Countrywide loan sometime during the summer of 2009. Hoff filed his complaint on June 23, 2009. The record does not indicate whether the default occurred before or after Hoff filed the complaint. Regardless, the complaint alleges negligence claims and breach of contract claims for Countrywide's role

13

in closing the buy-sell agreement between Hoff and Beebe. The complaint raises no allegations related to a default on the Countrywide loan. The trust indenture provision does not entitle either party to attorney fees under these circumstances. The District Court correctly denied Hoff's request for attorney fees.

¶38    Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JIM RICE