DA 10-0519

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 179

THE ESTATE OF MADELEINE WILLSON
and ROBERT WILLSON,

       Plaintiffs and Appellants,

  v.

DR. BRICE T. ADDISON, BENEFIS HEALTHCARE
SYSTEM and PEACE HOSPICE OF MONTANA,

       Defendants, Appellees, and Cross-Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDV 09-004
Honorable Laurie McKinnon, Presiding Judge

COUNSEL OF RECORD:

       For Appellants:

           Geoffrey C. Angel, Angel Law Firm, Bozeman, Montana

       For Appellees:

           Kevin A. Twidwell, Larry E. Riley, Garlington, Lohn & Robinson, PLLP,
Missoula, Montana (Dr. Addison)

           Julie A. Lichte, Kiely Keane, Crowley Fleck, PLLP, Bozeman, Montana
(Benefis and Peace Hospice)

           Submitted on Briefs:   June 22, 2011
                    Decided:   July 29, 2011

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Plaintiffs, the Estate of Madeleine Willson and Robert Willson, individually, (collectively "Robert") appeal an order of the Eighth Judicial District Court, Cascade County, granting Defendants' Benefis Hospitals, Inc. ("Benefis"), Peace Hospice of Montana ("Peace Hospice"),[1] and Dr. T. Brice Addison ("Dr. Addison")[2] motion for summary judgment and denying Robert's motion for summary judgment. Benefis cross-appeals. We affirm.

¶2     Dr. Addison was Madeleine Willson's ("Madeleine") physician for approximately 20 years. In 2000, Madeleine was diagnosed with breast cancer. She had a double mastectomy but declined chemotherapy or radiation treatment. In July 2005, Madeleine's condition had deteriorated significantly. She contacted Dr. Addison's office on July 29, 2005, but he was on vacation so she was referred to the Benefis Hospital emergency room. Madeleine was admitted to the hospital the same day with a diagnosis of metastatic breast cancer with liver and bone metastases. Her cancer had spread to her liver, skull, vertebrae, spleen, lymph nodes, and uterus.

¶3     Her attending physician, Dr. Hong, consulted with an oncologist, Dr. Warr. Dr. Warr felt Madeleine's condition was grave and she should be admitted to hospice. Dr. Warr ordered palliative care, including medications for pain. He felt her prognosis was

---

[1] Benefis Healthcare System, as listed in the caption, is a misnomer. The entity's correct name is Benefis Hospitals, Inc. Peace Hospice of Montana is a department of Benefis Hospitals, Inc. with a separate physical location. Therefore, "Benefis" shall refer to both Benefis Hospitals, Inc. and Peace Hospice of Montana. We will use their individual names when referring to the actual, separate physical locations of each.
[2] Dr. Brice T. Addison, as listed in the caption, is also a misnomer. His correct name is Dr. T. Brice Addison.

measured in days or weeks at the most. On August 3, 2005, Dr. Addison cut short his vacation and returned to see Madeleine. After examining Madeleine, Dr. Addison told Robert that Madeleine could die at any time. After consulting with Dr. Addison, Robert agreed to admit Madeleine to Peace Hospice.

¶4 Dr. Addison prepared the orders for Madeleine's admission to hospice, which included orders for the administration of medication for anxiety and pain on an as-needed basis. Dr. Addison maintains that Robert never told him that Madeleine did not want narcotic pain medication. Dr. Addison recalls conversations over his 20 years as Madeleine's physician where she told him she wanted to be comfortable when she died. Madeleine also wrote a letter to her oncologist, stating she wanted a doctor to help alleviate her pain as she approached death. Madeleine also signed a living will, indicating that she did not want any procedures "that merely prolong the dying process and are not necessary to my comfort or freedom from pain."

¶5 Madeleine was admitted to Peace Hospice on August 4, 2005. While at Peace Hospice, Madeleine was given medication for pain and anxiety. In August 2008, while Madeleine's case was pending before the Montana Medical Legal Panel, Benefis destroyed a Narcotic Count Record ("NCR") kept by Peace Hospice relating to medications given to Madeleine during her brief (less than 24 hour) stay at Peace Hospice. The NCR was destroyed pursuant to Benefis's three year record retention policy. The NCR is not a patient record, but documents the count of narcotic drugs at Peace Hospice to ensure they are not diverted. It also documents the destruction of any

3

remaining narcotics after a patient is discharged. Doses administered to patients are documented in the specific patient's medical chart.

¶6 In the early hours of August 5, 2005, Madeleine became unresponsive and her respiratory rate declined. A hospice nurse called Dr. Addison at Robert's insistence. Robert felt that Madeleine's unresponsiveness was due to medication and he wanted Madeleine transferred back to the emergency room. Dr. Addison agreed to the transfer, even though it went against Madeleine's do not resuscitate order, because Robert was adamant. At the emergency room, Dr. Addison ordered the administration of Narcan, a drug that reverses the effects of narcotics. Madeleine did not respond to the drug.

¶7 Madeleine was then admitted to Benefis Hospital. She never regained consciousness and died on August 10, 2005. An autopsy concluded Madeleine died of metastatic breast cancer and acute aspiration pneumonia. Robert requested that the pathologist send samples to the Mayo Clinic for analysis of a possible overdose. The Mayo Clinic determined Madeleine did not suffer an overdose.

¶8 Robert filed his complaint on January 5, 2009, alleging medical malpractice -- that the administration of medication "expedite[d]" Madeleine's death and that Madeleine did not give informed consent regarding the administration of the medications. After discovery was conducted, Benefis filed two motions for summary judgment. The first argued that Robert had failed to establish causation through qualified expert testimony, which Dr. Addison joined;[3] the second argued that Robert did not establish breach of the

---

[3] Robert repeatedly asserts that Dr. Addison did not move for summary judgment. Robert also asserts that "the district court did not grant summary judgment to Dr. Addison." Both are blatant

4

standard of care through qualified expert testimony. Robert also filed a motion for summary judgment seeking default judgment in his favor as sanction for Benefis' alleged spoliation of evidence.

¶9 The District Court held a hearing on the motions, and after reviewing the record and the experts' depositions, ultimately granted summary judgment on the issue of causation in favor of Benefis and Dr. Addison. The District Court found that "Plaintiffs have failed to produce any testimony that Defendants' alleged breach of the standard of care caused Ms. Willson to have a shorter life." The District Court did not rule on Benefis' motion for summary judgment regarding standard of care. It denied Robert's motion for summary judgment regarding spoliation of evidence. Judgment was entered in favor of Benefis and Dr. Addison on all Robert's claims.

¶10 Robert appeals the grant of summary judgment on causation and the denial of his motion for summary judgment on spoliation. Benefis cross-appeals the non-ruling on its motion for summary judgment regarding standard of care. Because we affirm both the grant of summary judgment to Benefis and Dr. Addison on the issue of causation and the denial of Robert's motion for summary judgment on the issue of spoliation, we do not reach Benefis' cross-appeal.

**STANDARD OF REVIEW**

¶11 We review summary judgment rulings de novo. *Goettel v. Estate of Ballard*, 2010 MT 140, ¶ 10, 356 Mont. 527, 234 P.3d 99. Applying the same M. R. Civ. P. 56 criteria

---

misrepresentations of the record and untrue. Dr. Addison joined in Benefis' motion for summary judgment on the issue of causation, that motion was granted, and judgment was entered in favor of both Benefis and Dr. Addison on all claims.

as the district court, we determine whether the moving party has established both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. *Id*. We review a district court's conclusions of law for correctness. *Id*. at ¶ 11. We review a district court's findings of fact to determine whether they are clearly erroneous. *Id*.

¶12     We review a District Court's decision related to discovery sanctions for an abuse of discretion. *Eisenmenger v. Ethicon, Inc.*, 264 Mont. 393, 402, 871 P.2d 1313, 1319 (1994).

## DISCUSSION

¶13     Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56; *Old Elk v. Healthy Mothers, Healthy Babies, Inc.*, 2003 MT 167, ¶ 15, 316 Mont. 320, 73 P.3d 795; *Montana Deaconess Hospital v. Gratton*, 169 Mont. 185, 188, 545 P.2d 670, 672 (1976). The initial burden is on the moving party to establish that no genuine issue of material fact exists. *Old Elk*, ¶ 15. The burden then shifts to the non-moving party, who must "set forth specific facts showing that there is a genuine issue for trial." *Id*.

¶14     To raise a genuine issue of material fact, the proffered evidence must be "material and of a substantial nature, not fanciful, frivolous, gauzy or merely suspicious." *Id*. at ¶ 16. The opposing party must present substantial evidence, as opposed to mere denial,

6

speculation, or conclusory statements, that raises a genuine issue of material fact. *Peterson v. Eichhorn*, 2008 MT 250, ¶ 13, 344 Mont. 540, 189 P.3d 615.

¶15 *Did the District Court err when it granted summary judgment to Benefis and Dr. Addison on the issue of causation and denied Robert's motion for summary judgment on the issue of spoliation?*

## A. Grant of Summary Judgment on Causation

¶16 Benefis, joined by Dr. Addison, sought summary judgment on the issue of causation. They argued that Robert failed to meet his burden of establishing this element by expert testimony. Robert opposed the motion. The District Court granted Benefis's and Dr. Addison's motion, finding that Robert failed to meet his burden of demonstrating a genuine issue of material fact regarding causation. It found that Robert failed to produce testimony that Defendants' alleged breach of the standard of care caused Madeleine to have a shorter life.

¶17 It is well settled Montana law that the plaintiff in a medical malpractice action must establish the following elements: (1) the applicable standard of care, (2) the defendant departed from that standard of care, and (3) the departure proximately caused plaintiff's injury. *Gratton*, 169 Mont. at 189-90, 545 P.2d at 672. Without expert testimony to establish these elements,[4] no genuine issue of material fact exists and the defendant is entitled to judgment as a matter of law. *Id*.; *Falcon v. Cheung*, 257 Mont.

---

[4] Standard of care must be established by expert medical testimony unless the conduct complained of is readily ascertainable by a layman. *Gratton*, 169 Mont. at 189, 545 P.2d at 672. The standard of care is not readily ascertainable to a layman in the present case, and no such argument has been made.

296, 303, 848 P.2d 1050, 1055 (1993); *Estate of Nielsen v. Pardis*, 265 Mont. 470, 473-74, 878 P.2d 234, 235-36 (1994).

¶18   Expert medical testimony must exhibit "reasonable medical certainty." *Dallas v. Burlington Northern, Inc.*, 212 Mont. 514, 522-23, 689 P.2d 273, 277 (1984). Put another way, "we are striving for . . . a probability rather than a possibility." *Id.* at 523, 689 P.2d at 277. The "evidentiary standards are satisfied if medical testimony is based upon an opinion that it is 'more likely than not.' " *Id.*

¶19   The District Court did not err in granting summary judgment to Benefis and Dr. Addison. After reviewing the record, we agree that Benefis and Dr. Addison met their initial burden on their motion for summary judgment on causation - whether the medications administered shortened Madeleine's life. They provided the expert testimony of Dr. Addison, Dr. Warr, and Dr. Cobb that Madeleine's death was imminent. Dr. Warr testified that at the time of her admission on July 29, 2005, Madeleine was near death. Dr. Addison testified that Madeleine only had a short time to live and could die at any time, and that the administration of medication could have *prolonged* Madeleine's life. Dr. Cobb opined that Madeleine's death would have occurred within the same time frame, regardless of the administration of medication. Further, Dr. Carey, the pathologist that performed Madeleine's autopsy, testified that Madeleine's cause of death was widespread metastasized breast cancer and acute aspiration pneumonia. Benefis and Dr. Addison established, by qualified expert testimony, that Madeleine was in the process of dying from the time she was admitted to the hospital on July 29, 2005, that her death

8

would occur within a short period of time, and that the cause of her death was cancer and aspiration pneumonia.

¶20 It was then Robert's burden to come forth with expert testimony on the element of causation that would create a genuine issue of material fact for trial. M. R. Civ. P. 56. He did not. Interestingly, the District Court notes that Robert's experts testified that some of the "opinions" ascribed to them in Robert's expert disclosure were not actually their opinions. Robert's experts, Dr. Bennett and Dr. Doubeck, testified they could provide *no* opinion on Madeleine's prognosis. Neither Dr. Bennett nor Dr. Doubeck testified that the medications administered to Madeleine shortened her life. Both Drs. Bennett and Doubeck deferred to Madeleine's treating physicians, Drs. Warr and Addison, regarding her prognosis.

¶21 Robert did not meet his burden to produce evidence that would create a genuine issue of material fact regarding causation; that is, the medications administered to Madeleine shortened her life. Apparently even Robert is unconvinced, stating in a brief that "Madeleine's life expectancy is elusive." Nor did Robert refute Dr. Addison's testimony that Madeleine's life may have been prolonged by the administration of medication. Robert provided no testimony that would establish the element of causation. Therefore, granting summary judgment in favor of Benefis and Dr. Addison on the issue of causation was not only entirely appropriate; it was required as a matter of law. *Gratton*, 169 Mont. at 189-90, 545 P.2d at 672-73; *Falcon*, 257 Mont. at 303, 848 P.2d at 1055; *Estate of Nielsen*, 265 Mont. at 474, 878 P.2d at 235-36.

9

## B. Denial of Summary Judgment on Spoliation

¶22    Robert moved for summary judgment, seeking default judgment in his favor and against Peace Hospice as a sanction for the destruction of the NCR.[5] Benefis opposed the motion and it was denied. The District Court found that Robert did not meet his burden of demonstrating spoliation of the documents.

¶23    We first take a moment to clarify that Robert did not assert an actual spoliation claim. The torts of intentional and negligent spoliation are stand alone torts that must be affirmatively plead and apply only to non-parties to the litigation. *See Oliver v. Stimson Lumber Co.*, 1999 MT 328, 297 Mont. 336, 993 P.2d 11. Robert sought default judgment on liability as a sanction for failure to provide the NCR in response to his request for production (because it had been destroyed). Such a motion is not a motion for summary judgment, but is properly a motion for sanctions under M. R. Civ. P. 37. Because what was before the District Court was essentially a motion for sanctions, we will treat the District Court's order accordingly.

¶24    We review a District Court's decision related to discovery sanctions for an abuse of discretion. *Eisenmenger*, 264 Mont. at 402, 871 P.2d at 1319. We generally defer to the district court because it is in the best position to determine both whether the party in question has disregarded the opponent's rights, and which sanctions are most appropriate. *Richardson v. State*, 2006 MT 43, ¶ 21, 331 Mont. 231, 130 P.3d 634.

---

[5] The District Court's order states Robert sought judgment against Benefis and Dr. Addison. However, Robert's brief indicates he only sought judgment against Peace Hospice. Regardless of which party he sought default against, he was entitled to default judgment against none.

¶25 In some cases, discovery abuses warrant the imposition of default judgment on the issue of liability. *Id. at* ¶ 58. In *Richardson*, we held default judgment was the only proper sanction for defendant's "willful and bad faith conduct," namely "blatant and systemic" abuse of the discovery process that "undermined the integrity of the entire proceeding[.]" *Id*. at ¶¶ 65-68. There, the defendant knowingly "concealed evidence … until the eve of trial by asserting baseless objections" to plaintiff's discovery requests. *Id*. at ¶ 23. The evidence was highly relevant and probative, and it "ultimately became the focal point of the trial." *Id*. More egregiously, the defendant attempted to use the lack of knowledge it created by its discovery abuses against the plaintiff. *Id*.

¶26 In *Schuff v. A.T. Klemens & Son*, 2000 MT 357, ¶ 81, 303 Mont. 274, 16 P.3d 1002, we found that default judgment was an appropriate sanction for discovery abuse because the defendant "willfully and in bad faith shielded Schuff from a clear view of the truth," in other words, the defendant knowingly concealed evidence from the plaintiff. In *Culbertson-Froid-Bainville Health Care Corp. v. JP Stevens & Co., Inc.*, 2005 MT 254, ¶ 17, 329 Mont. 38, 122 P.3d 431, we upheld a default judgment for "evasive, woefully incomplete" discovery responses. We described the violations as a "flagrant, complete and persistent disregard of the District Court's orders and Montana's Rules of Civil Procedure" warranting default judgment.

¶27 In the present case, Robert has not shown the District Court erred in denying default judgment against Benefis and Dr. Addison. It is true that the NCR was destroyed, and it was destroyed after Benefis and Dr. Addison had notice of Robert's claim before the Montana Medical Legal Panel. For that, we strongly caution health-care providers

11

that once notice is given of a pending claim and until final resolution of that claim, *all* records that may be implicated in the treatment of the patient should be retained, regardless of any records-retention or destruction policy, and regardless that the record may not pertain only to the claiming patient's care or treatment.

¶28 However, we find that Benefis did not destroy the NCR in an attempt to shield Robert from the truth, nor did Benefis blatantly, systemically, willfully and in bad faith violate the rules of discovery. At no time did Benefis conceal evidence, nor did Benefis conceal the fact that the record was destroyed. Benefis answered Robert's request to produce the NCR honestly – "Peace Hospice retains [NCRs] for three years and, therefore, no longer has records for 2005." Further, Robert has shown no prejudice as a result of not having the NCR. Robert received all of Madeleine's patient records, which include the doses of medication administered to her. The District Court was in the best position to determine both whether Benefis disregarded Robert's rights, and which sanctions, if any, were most appropriate. *Richardson*, ¶ 21. It found no sanctions should be awarded. We agree. The District Court did not abuse its discretion when it denied Robert's motion.

¶29 We affirm the denial of Robert's motion, although it was denied for the wrong reason (failure to prove spoliation). *See Cheff v. BNSF Railway Co.*, 2010 MT 235, ¶ 37, 358 Mont. 144, 243 P.3d 1115 (citing *Wells Fargo Bank v. Talmage*, 2007 MT 45, ¶ 23, 336 Mont. 125, 152 P.3d 1275) (we will affirm a district court when the proper outcome is reached although for the wrong reason).

12

### C. Additional Issues on Appeal

¶30    Robert also argues on appeal that the loss of chance doctrine somehow entitles him to relief, although it is evident Robert has a limited grasp of this doctrine.  That aside, this claim was not plead or addressed by the District Court, and cannot be argued here.  *Hoff v. Lake County Abstract & Title Co.*, 2011 MT 118, ¶ 35, 360 Mont. 461, ___ P.3d ___ (citing *Peterman v. Herbalife Intl., Inc.*, 2010 MT 142, ¶ 20, 356 Mont. 542, 234 P.3d 898).  Ironically, at oral argument on the summary judgment motions,[6] Robert stated "this isn't really a loss of chance case."  It also appears Robert is attempting to assert a survival claim on Madeleine's behalf.  Again, this claim was not plead or addressed by the District Court, and we will not address it.  *Hoff*, ¶ 35.

### CONCLUSION

¶31    It is clear from the record that Robert produced no evidence that Madeleine's death was expedited due to the administration of medications.  The District Court did not err in granting summary judgment to Benefis and Dr. Addison.  It is also clear from the record that the District Court did not abuse its discretion when it denied Robert's motion seeking default judgment.

¶32    Affirmed.

/S/ MICHAEL E WHEAT

---

[6] Robert argues that the transcript of the hearing on oral argument was not part of the record below and was improperly included in the record on appeal.  We beg to differ.

We Concur:


/S/ BRIAN MORRIS
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON