JUSTICE RICE,
dissenting.
¶34 In my view, the record establishes that the District Court correctly granted summary judgment to the Defendants.
¶35 “The party moving for summary judgment has the initial burden of proving that no genuine issues of material fact exist.... The burden then shifts to the non-moving party to prove by more than mere denial and speculation that a genuine issue of material fact exists.” Brown & Brown of MT, Inc. v. Raty, 2012 MT 264, ¶ 17, 367 Mont. 67, 289 P.3d 156 (citing Myers v. Dee, 2011 MT 244, ¶ 10, 362 Mont. 178, 261 P.3d 1054). State Farm presented sufficient evidence to carry its initial *84 burden, demonstrating from the record that it had obtained the insurance coverage the Baileys had requested. The Court’s analysis impliedly reaches that conclusion also. Opinion, ¶¶ 23, 25, 30. However, although Baileys demonstrated a genuine issue of material fact with regard to some of State Farm’s evidence, they failed to satisfy their burden to demonstrate a genuine issue as to the entirety of State Farm’s evidence, and thus failed to carry their burden.
¶36 State Farm presented the testimony of Nola Softich, who testified that it was her custom and practice to provide a new customer with the “goldenrod pamphlet,” which was “included with every packet” given to customers. This pamphlet described all the coverages available for purchase from State Farm. Softich always reviewed those coverages with the customer, including uninsured and underinsured motorist coverages. This is evidence of the standard procedure Softich would have followed when meeting with the Baileys on April 3,1998. As the District Court noted, the Baileys offered no evidence to specifically refute Softich’s testimony that these coverages had been discussed. However, the Baileys did testify that they gave their insurance card to the agency and requested the same coverages as they had in Oregon. Softich testified that she has never advised an insured to decrease uninsured or underinsured coverage. This evidence about the parties’ initial conversation reflects a genuine issue of fact about what understanding arose from that conversation. If there was no further evidence, denial of summary judgment would be appropriate.
¶37 Based on that initial conversation, Softich then prepared two applications for coverage on Baileys’ two vehicles. The applications were one-page printed forms that listed 12 coverages in column form. The heading of this column was “Coverages Available.” Next to the column of available coverages was another column with the heading “Selected?” Under this heading, a ‘Yes” or “No” was entered next to each coverage indicating whether or not the applicant had selected that coverage. On both applications, the word “No” appeared next to the coverage for underinsured motor vehicle. However, the coverages were not identical on each application. A different list of coverages was selected for each vehicle, although UIM coverage was selected for neither vehicle. At the bottom of each application, as the Court notes in ¶ 7 of the Opinion, the form stated that the applicant was applying “for the insurance indicated,” that the applicant had read the form and the statements were correct, and that the applicant had personally selected the coverages. Stan Bailey signed both applications. These documents are the result of the parties’ initial conversation on April 3, *85 1998.
¶38 The Court cites the principle that an insured does not have an absolute duty to read an insurance policy. Opinion, ¶ 22. On the basis of this principle, the Court apparently excuses any obligation on the part of the Baileys to read or be accountable for the signed applications and statements made therein. However, we have applied the “no read” principle only in cases where an insurer made changes within the body of a policy and the insured was not otherwise notified of the change. Robertus, ¶ 42; Thomas, ¶¶ 26-27; Fillinger, 283 Mont. at 78-79, 938 P.2d at 1352. Never before have we held that an insurance applicant has no obligation to read a one-page application form that plainly lists coverage choices and on which the applicant certifies that he has read the form and made the coverage choices as indicated. The Court cites no authority for this principle. The Court also holds that Baileys’ statement about wanting the same coverage as they had in Oregon is not barred by the parol evidence rule because, by merely alleging they did not understand its terms, the Baileys have made a proper challenge to “the validity of the insurance application” prepared by Softich. Opinion, ¶ 27. Such a weak factual assertion should not be permitted to create a genuine issue of fact about the signed applications. “To raise a genuine issue of material fact, the proffered evidence must be ‘material and of a substantial nature, not fanciful, frivolous, gauzy or merely suspicious.’” Estate of Willson v. Addison, 2011 MT 179, ¶ 14, 361 Mont. 269, 258 P.3d 410. “Generally speaking, once an agreement is reduced to writing, it is considered to contain all terms of the agreement and extrinsic evidence concerning the intentions of the parties is not admissible. Section 28-2-905(1), MCA.” McCulley v. Am. Land Title Co., 2013 MT 89, ¶ 33, 369 Mont. 433, 300 P.3d 679. On this record, I would conclude that the Baileys did not present sufficient evidence to create a genuine factual issue about the signed applications, which were individually prepared for each of the Baileys’ two vehicles after the parties’ initial conversation, and signed by the Baileys underneath language stating that they had read the form and chosen the coverages as indicated.
¶39 Thereafter, the Baileys paid premiums for the next seven years and received insurance coverage cards, policies and booklets. The Baileys received new insurance cards at least two times a year for each policy, listing their coverages. They also received renewal notices two times a year for each policy, with each notice listing the coverages and charges for each coverage. The Baileys simply allege that they didn’t read any of these and the Court, apparently under the new, broadly- *86 stated, “no-read” principle, accepts this excuse and gives no significance to this evidence. However, this is further evidence that State Farm provided the coverages that the Baileys had requested.
¶40 Then, in 2005, Stan called the agency and talked to Jeannie Fetters to make some changes in his coverages. In that conversation, Fetters pointed out to Stan that he did not have UIM coverage, and Stan responded he did not want to add that coverage, but, rather, only wanted to make the changes he had called about. Fetters specifically remembered the conversation and also made notes about the conversation in State Farm’s master record. Baileys offered no contradictory evidence. However, the Court, citing the Baileys’ assertion that “they did not even know what UIM coverage was until after the accident,” concludes that there are “varying accounts” about this conversation. Opinion, ¶ 29. This is incorrect. Baileys offered nothing in contradiction to the very specific and recorded evidence offered by State Farm about this conversation. Baileys’ statement merely claims ignorance about the nature of UIM insurance-again, “gauzy” and speculative evidence-and nothing about the conversation.
¶41 To further rebut the evidence of this 2005 event, the Court again cites Stan’s abiding belief that he had the same coverage as he had in Oregon. The Court’s reliance on Stan’s Oregon coverage pales when it is recalled that the Baileys made that request seven years earlier in 1998, thereafter signed contrary application forms, paid contrary premiums, and received contrary coverage notices until 2005, when Stan called to change their coverages. By then, the “Oregon request” was long past and there is no evidence that Stan was still trying to obtain the same coverage he had in Oregon. As we have recently stated, when reviewing the record for purposes of summary judgment, it is important to recognize the “chronology of events” that the evidence demonstrates. McCulley, ¶ 35.
¶42 I would conclude that the Baileys did not carry their burden to demonstrate genuine issues of material fact and that State Farm was entitled to summary judgment as a matter of law. I would affirm the District Court.