FILED

March 17 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0098

DA 14-0098

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 81

ALLEN GINN and LAURIE GINN,

       Plaintiffs and Appellees,

   v.

SMURFIT STONE CONTAINER
ENTERPRISES, INC., and SMURFIT
STONE CONTAINER CORPORATION,

       Defendants and Appellants.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-12-761
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Milt Datsopoulos, Terance P. Perry, J.R. Casillas, Datsopoulos, MacDonald,
          & Lind, P.C.; Missoula, Montana

      For Appellees:

          Alexander (Zander) Blewett, III, Kurt M. Jackson, Hoyt & Blewett PLLC;
          Great Falls, Montana

Submitted on Briefs:  November 13, 2014
Decided:  March 17, 2015

Filed:

_____
                  Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1      Defendant Smurfit Stone Container Enterprises, Inc. (Smurfit) appeals from the order of the Montana Fourth Judicial District Court, Missoula County, denying its motion to vacate entry of default.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2      Allen Ginn was a log truck driver employed by Ginn Trucking.  On July 11, 2008, Ginn drove to a mill owned by Smurfit to deliver a truck load of logs.  After arriving at the mill, Ginn released the logs.  Several logs fell on him, causing serious injury.

¶3      On January 26, 2009, Smurfit filed voluntary petitions for bankruptcy relief under Chapter 11 of Title 11 of the United States Code in U.S. Bankruptcy Court for the District of Delaware.  The court established a claim bar date of August 28, 2009, for claims accruing prior to the petition.

¶4      On October 21, 2011, Ginn and his wife Laurie (Ginns) filed a motion in the bankruptcy proceeding requesting: (1) leave to file a late claim; (2) relief from the plan injunction and its automatic stay; and (3) that the Bankruptcy Court abstain from hearing the claim under 28 U.S.C. § 1334(c) so that the Ginns could file the claim in Montana.

¶5      Following the motion, counsel for both parties negotiated and stipulated an agreement (the Stipulation), which was approved by order of the Bankruptcy Court on June 28, 2012. Among the terms of the Stipulation, Smurfit agreed not to seek to enforce the claim bar date and to allow the Ginns to file suit in Montana District Court without seeking to remove to Federal District Court.  Smurfit also agreed to set aside approximately $1.4 million and 25,000 shares of stock in Rock-Tenn Company (Smurfit's successor in interest) in order to

satisfy any possible settlement or judgment. The Ginns were authorized to file a proof of claim against Smurfit within thirty days of the Stipulation order, and to file a complaint against Smurfit in Montana District Court. As part of the Stipulation, Smurfit agreed to accept service of the complaint by first-class mail to Christopher Berg, Assistant General Counsel of Rock-Tenn Company at an address provided by Smurfit in the Stipulation.

¶6 On or about July 9, 2012, ten days after the order approving the Stipulation was entered, the Ginns mailed a Complaint, Summons, Acknowledgment of Service, and a copy of the Stipulation and Order to Berg at the given address. The Summons required Smurfit to file and serve an Answer within 21 days (by July 30, 2012). The Acknowledgment of Service was not returned and no answer was filed by that date.

¶7 After July 30, 2012, Ginns' counsel attempted to reach Berg by phone on two separate occasions. The phone calls were not returned or acknowledged.

¶8 On August 16, 2012, the Ginns again served Smurfit, this time by hand delivering a copy of the Complaint, Summons, etc., to the front desk receptionist at Rock-Tenn Company via process server. Again, the Ginns received no reply or acknowledgment of service.

¶9 On September 20, 2012, the Ginns requested entry of default from the District Court. The court entered default against Smurfit on September 27, 2012. On October 19, 2012, the Ginns moved the court for default judgment against Smurfit. Smurfit appeared through counsel at the District Court on October 25, 2012.

¶10 On October 30, 2012, Smurfit moved the District Court to vacate the entry of default. On December 19, 2012, the court denied Smurfit's motion. In its ruling the District Court held that the parties would be able to argue the amount of damages. The court set a hearing

3

on damages for December 27, 2012, but that hearing had to be rescheduled when Smurfit appealed the denial of its motion to vacate entry of default to this Court. We dismissed the appeal as premature because entry of default (as opposed to default judgment) is not a final judgment. Order, *Ginn v. Smurfit Stone Container Corp.* (Mont. Jan. 14, 2013) (DA 12-0770).

¶11 On February 19, 2013, the District Court held a scheduling conference at which it clarified the scope of the contemplated hearing on damages. The court stated that the default would stand with regard to Smurfit's liability, but that a jury would be allowed to consider the issues of causation and damages. On January 21, 2014, after a four-day jury trial, the court entered judgment awarding Allen Ginn $3,470,899.56 in damages plus an additional $500,000.00 to Laurie Ginn. Smurfit appeals.

## STANDARDS OF REVIEW

¶12 We review a trial court's denial of a motion to vacate an entry of default for slight abuse of discretion. *Hoff v. Lake County Abstract & Title Co.*, 2011 MT 118, ¶ 18, 360 Mont. 461, 255 P.3d 137. The party seeking to set aside a default has the burden of proof. *Bryden v. Lakeside Ventures, LLC*, 2009 MT 320, ¶ 18, 352 Mont. 452, 218 P.3d 61. We will overturn a trial court's findings of fact only if the findings are clearly erroneous. *Meine v. Hren Ranches, Inc.*, 2015 MT 21, ¶ 20, ___ Mont. ___, ___ P.3d ___, 2015 Mont. LEXIS 22. A finding of fact is clearly erroneous if not supported by substantial evidence, if the court misapprehended the effect of the evidence, or a review of the record leaves this Court with a definite and firm conviction that a mistake has been made. *Meine*, ¶ 20.

## DISCUSSION

4

¶13 Montana Rule of Civil Procedure 55(c) states that, "[t]he court may set aside an entry of default for good cause. . . ." In *Essex Ins. Co. v. Jaycie, Inc.*, we set forth criteria for evaluating whether good cause exists to set aside a default. 2004 MT 278, 323 Mont. 231, 99 P.3d 651. We directed courts to consider:

> (1) whether the default was willful, (2) whether the plaintiff would be prejudiced if the default should be set aside, and (3) whether the defendant has presented a meritorious defense to plaintiff's claim. The court must also balance the interests of the defendant in the adjudication of his defense on the merits, against the interest of the public and the court in the orderly and timely administration of justice.

*Essex*, ¶ 10 (citing *Cribb v. Matlock Communications*, 236 Mont. 27, 30, 768 P.2d 337, 339 (1989)).

¶14 The District Court considered the above criteria and ruled that good cause did not exist to vacate the entry of default. The court found that Smurfit willfully defaulted when it ignored service by mail, repeated phone calls from the Ginns, and personal service. The court also found that there was no good faith mistake on Smurfit's part. Accordingly, the court denied Smurfit's motion to vacate the default.

¶15 The District Court performed an *Essex* analysis and we will do so here. In reaching the same conclusion as the District Court, we note that, in situations such as this one where the parties have specifically negotiated and agreed upon a service procedure, the fact that the defaulting party violated that procedure should weigh heavily against setting aside the default.

**Willfulness**

¶16 Smurfit argues that its default was not willful, but merely the result of a mistake. Smurfit attempts to contrast its conduct with that of the defaulting party in *Essex*, where we

5

affirmed the district court's finding that the conduct leading to the default was willful. In *Esssex*, a former Montana State Prison (MSP) inmate encountered an MSP guard in a bar owned by Jaycie, Inc. The former prisoner beat the guard severely. Bar staff propped the injured guard on a bar stool outside the bar and left him. The guard fell from the bar stool and suffered further injury. The guard sued Jaycie, alleging negligence and dram shop violations. *Essex*, ¶ 2.

¶17 Jaycie was insured by Essex Ins. Co. Essex reviewed the case and determined that there was no coverage under its insurance policy with Jaycie. After informing Jaycie of its coverage determination, Essex sought a declaratory judgment that it had no liability under the policy. *Essex*, ¶ 3. Essex served Jaycie on August 7, 2003, and Jaycie did not file an answer within the 20 days allotted per Rule 12(a), M. R. Civ. P. Over the next month, Essex sent letters to Jaycie stating that it would not move for entry of default if Jaycie planned to appear in the matter. Essex also contacted the personal counsel for Jaycie's sole shareholder as well as Jaycie's insurance agent and asked that Jaycie respond to the complaint. Essex eventually sent a letter stating that it would seek a default if Jaycie did not respond by September 30. Jaycie's sole shareholder finally responded on September 25 and stated that she would let Essex know in a few days if she would appear. She did not do so. *Essex*, ¶ 4.

¶18 After September 30, Essex moved for entry of default which was granted. Essex then moved for default judgment. Prior to entry of default judgment, Jaycie appeared and moved that the entry of default be set aside. *Essex*, ¶ 5. In opposing the motion, Essex pointed out that it had repeatedly contacted Jaycie to request an appearance and gave ample warning it would seek entry of default if Jaycie did not appear. Jaycie countered that its shareholder

6

had been mistaken as to the nature of the complaints, that she thought they related to the underlying suit and that she believed the legal action was being handled by insurers. Jaycie claimed that she was unaware of the existence of the declaratory judgment action as a separate suit. We upheld the district court, stating:

> [a] party cannot profess ignorance in the face of repeated warnings that the insurer is denying coverage and that, if no answer is filed, a default will be taken. Whether or not [her] ignorance of the existence of the second suit was genuine or not, it was the product of her own unfounded belief that the underlying suit was covered.

*Essex*, ¶ 13.

¶19    Though the two situations are not factually identical, we find that Smurfit's default was willful for similar reasons. Like Jaycie, Smurfit ignored the Ginns' multiple attempts to contact them by service of process. Smurfit disputes the Ginns' claim that multiple attempts were made to contact Berg by phone. The District Court found the Ginns' evidence credible. However, even without considering the attempted phone calls we find it significant that Berg, a licensed attorney, was twice served with process and ignored or otherwise failed to respond to service each time. Like Jaycie, Smurfit claimed innocent ignorance, arguing that it thought the suit was being handled by others.

¶20    In other ways Smurfit's willfulness exceeded Jaycie's. Smurfit and the Ginns engaged in extensive negotiation prior to the Ginns commencing this action. The negotiations resulted in the Stipulation, which was agreed upon by both parties and entered as an order of the Bankruptcy Court. Having negotiated and agreed to the Stipulation, Smurfit was fully aware of how and to whom process would be served. The Stipulation specifically provided that Berg was the individual to whom process should be served via

7

first-class mail. Berg was initially served by first-class mail and then, after he failed to respond to the initial service, in person. Each attempt at service included a letter specifically referencing Berg as the person designated to accept service under the terms of the Stipulation, and included a copy of the Stipulation itself. Regardless of whether Berg mistakenly thought outside counsel was handling the matter, given that he was personally referenced in the court approved Stipulation his unfounded belief does not justify a finding against willfulness.

¶21    As to the first part of the *Essex* test, we hold that Smurfit was willful in its default.

## Prejudice

¶22    Smurfit maintains that the Ginns would not be prejudiced if the default were set aside. Smurfit characterizes the "seven week" delay caused by its default as "slight" in comparison to the time that had passed from the time Allen Ginn was injured. The Ginns counter that they have been seeking their day in court for over four years, and that in other cases we have upheld the entry of default when the delay was less than that caused by Smurfit here. We agree with the Ginns.

¶23    We focus on the nature of the negotiated Stipulation in holding that the Ginns would be prejudiced if the court were to set aside its entry of default. Before the Ginns could file their claim they entered into extensive negotiations with Smurfit. The result was a bargained for agreement that allowed the Ginns to file their claim but capped their possible recovery. As Smurfit itself points out, by the time the Stipulation was agreed upon, Allen Ginn was

8

four years removed from his injury. During that time the Ginns were without his income and responsible for the expenses involved in his treatment and rehabilitation.[1]

¶24   Regardless of who was at fault for the initial delay, the fact remains that the Ginns had suffered losses and through negotiation sought a swift resolution of their case. To that end, they agreed to limit Smurfit's potential liability in exchange for a chance to recoup some of their losses by bringing a claim. In failing to respond to the summons, Smurfit directly impinged upon the Ginns' opportunity to have their claim promptly evaluated by the District Court, an opportunity the Ginns had bargained for. If the entry of default were vacated, the Ginns would suffer prejudice because Smurfit would effectively have been able to avoid its obligation to respond to the Ginns' claim in timely fashion, while the Ginns would still be bound by the liability cap agreed to in the Stipulation.

¶25   As to the second *Essex* factor, we find the Ginns would be prejudiced if the entry of default were vacated.

### Meritorious Defense

¶26   Finally, we consider the third *Essex* factor, whether Smurfit had a meritorious defense. Smurfit points to two defenses contained in its answer, which together represent the argument that Allen Ginn's own negligence was the cause of the accident and his injuries.

¶27   The Ginns argue that for Smurfit to prevail on this factor it must demonstrate that it had a defense that would have "eliminated completely its liability." For this proposition, they cite *Hoff*, ¶ 30. This argument relies on *obiter dicta* from *Hoff* and completely ignores

---

[1] We do not mean to place the blame on Smurfit for this delay. The parties disagree as to who was at fault for the Ginns missing the bankruptcy claim bar deadline. The Ginns contend Smurfit failed to

9

our discussion of the meritorious defense *Essex* factor wherein we held that the party seeking to vacate the entry of default "does not have to demonstrate a likelihood of ultimate success on the merits of its defense, and the Court need not discuss the merits of the defense beyond finding whether a prima facie defense exists." *Hoff*, ¶ 28 (citing *Essex*, ¶ 14).

¶28    Here, Smurfit has raised a defense to the Ginns' claim that Smurfit's negligence caused Allen Ginn's injury. Smurfit has an expert affidavit supporting its claim. Smurfit need not show the likelihood of success of this claim, and we need not discuss its merits to conclude that Smurfit had a meritorious, prima facie defense in this case.

### Balance of *Essex* Factors

¶29    Having concluded that the first two *Essex* factors weigh in favor of upholding the entry of default, while the third weighs in favor of vacating it, we must balance the factors in order to come to a conclusion. In this case, and in light of the facts before us, specifically the negotiated Stipulation governing the service of process between the parties, we hold that the *Essex* factors do not compel a finding of good cause to vacate the entry of default.

¶30    Good cause does not exist to vacate the entry of default in light of Smurfit's failure to comply with the express provisions of the mutually agreed upon and court approved Stipulation. Smurfit's excuse that Berg mistakenly believed outside counsel was handling the claim does not constitute good cause to vacate the default where service was accomplished under terms specifically negotiated by Smurfit and approved by the Federal Bankruptcy Court. Rather, the fact that Smurfit willingly agreed to the manner of service and the person to accept service and then weeks later claimed it had mistakenly thought

---

properly notify them of the claim bar date, Smurfit maintains that it gave the required notice and

someone else was handling the claim demonstrates an institutional failure on the part of Smurfit that rises to the level of willfulness.

¶31 Similarly, after extensive negotiations leading to the Stipulation, which rewarded Smurfit for allowing the Ginns to file their claim by capping its potential liability, Smurfit's failure to promptly respond to the Ginns' properly served complaint demonstrated an utter lack of respect for the Ginns' bargained-for right to have their claim resolved. Under such circumstances, the resulting delay of several months would amount to prejudice if the entry of default was vacated.

¶32 Despite the fact that Smurfit had a prima facie meritorious defense to the Ginns' arguments, we find that the first two factors, particularly the willfulness with which Smurfit defaulted, lead us to conclude that good cause does not exist to vacate the entry of default.

¶33 Based on our analysis of the *Essex* factors with respect to this case we hold that the District Court did not abuse its discretion, even slightly, when it denied Smurfit's motion to vacate the entry of default.

**Constitutional Issues**

¶34 Smurfit argues that the District Court's refusal to vacate the entry of default deprived Smurfit of its fundamental right to a jury trial under Section 26 of Article II of the Montana Constitution and its due process rights under Section 1 of U.S. Constitution Amendment XIV, and Section 17 of Article II of the Montana Constitution.

¶35 We have consistently refused to consider issues raised for the first time on appeal. *In re T.E.*, 2002 MT 195, ¶ 20, 311 Mont. 148, 54 P.3d 38. To preserve an issue for appeal,

---

Ginns failed to meet the deadline due to their own carelessness.

an appellant must first raise that specific issue in the district court. *In re T.E.*, ¶ 20 (citing *State v. Benson*, 1999 MT 324, ¶ 19, 297 Mont. 321, 992 P.2d 831). The reasoning behind this rule is that it would be "fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." *In re T.E.*, ¶ 20.

¶36 Smurfit failed to preserve these issues by raising them before the District Court. We therefore decline to address them here. Smurfit attempts to avoid this result by arguing that it properly preserved the issues when it raised them before this Court in its first appeal, which we dismissed as premature. This argument is unavailing. Raising an issue before this Court does not eliminate the requirement to raise the issue before the District Court. The District Court did not have an opportunity to rule on the constitutional issues presented by Smurfit. The issues were not properly preserved and we will not address them on appeal.

**CONCLUSION**

¶37 Based on substantial evidence, the District Court made findings of fact that supported its decision to deny Smurfit's motion. Smurfit negotiated the Stipulation, which was entered as an order by the Bankruptcy Court, that set forth the manner in which the Ginns could properly serve Smurfit. The Ginns followed the proper procedure for service by first-class mail, and went beyond the service requirements by serving Smurfit in person when Smurfit failed to respond to service by mail. Nevertheless, Smurfit failed to appear in time to prevent the entry of default. Smurfit's willfulness in default and the prejudice to the Ginns that would result if the entry of default was vacated outweigh Smurfit's potential meritorious defense to the Ginns' claim. The District Court did not abuse its discretion, even slightly,

when it denied Smurfit's motion to vacate the entry of default.  Furthermore, Smurfit failed

to preserve its constitutional issues for appeal because it did not raise them in the District

Court and we decline to address them here.  Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA